**Noreen Rucinski**
Dir. Strategic Business Development
Schneider Rucinski Enterprises
3344 N Mt. View Dr
San Diego CA 92116
619-282-7977

Plaintiff in Pro Per

UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF CALIFORNIA

SCHNEIDER RUCINSKI ENTERPRISES, a California Corporation,

    Plaintiff,

vs.

TOUCH ASIA OUTSOURCING SOLUTIONS, INC., dba TOUCH ASIA CALL CENTER, INC.; RUDY NGAW; STRATASOFT, INC. PACIFIC CALL CENTERES; LANE MCCARTY individually and as an employee and/or agent of STRATASOFT, INC.; JASON PACE individually and as an employee and/or agent of STRATASOFT, INC.; MIKE BRIDGES individually and as an employee and/or agent of STRATASOFT, INC.; MICHIEL BRIDGES, JR., individually and as an employee and/or agent of STRATASOFT, INC.; INX, INC., a Texas Corporation formerly known as I-SECTOR CORPORATION; COLO 6 LLC, California Corporation, DBA U.S.COLO and HAJI NAVROZ, an individual, and DOES 1 through 20, inclusive

    Defendants.

Case No.: '08 CV 0138 WQH POR

DECLARATION OF NOREEN RUCINSKI

---

1

**I, Noreen Rucinski do hereby declare:**

1. I serve as director of litigation and recovery for SCHNEIDER RUCINSKI ENTERPRISES, (hereinafter referenced as "Plaintiff"). My office address is 3344 North Mountain View Drive., San Diego, California 92116, and my business phone number is 619-282-7977.

2. In my capacity as director of litigation and recovery, I am responsible for the administration of Plaintiff's portfolio of the lease account of Defendants, TOUCH ASIA OUTSOURCING SOLUTIONS, INC., d.b.a. TOUCH ASIA CALL CENTER, INC.; a California Corporation, RUDY NGAW; STRATASOFT, INC.; INX., a Texas Corporation formerly known as I-SECTOR CORPORATION (sometimes collectively referred to as "Defendants"). I currently have custody and control over the business records of Plaintiff as they pertain to the Defendants and have access to all on-line computer information at Plaintiff regarding Defendants. I took control over the business records of SRE as they pertain to the account of Defendants prior to the commencement of this action, and I have worked extensively with these records and am personally familiar with their contents. As director of litigation and recovery for Plaintiff, my duties include responsibility for administering accounts and litigation relating to collection on delinquent lease obligations. My current duties include responsibility for supervision and management of litigation relating to collection of delinquent lease obligations. I was serving as director of litigation and recovery for Plaintiff at the time the obligation, which is the subject of this litigation, was entered into.

2

3. My position requires and my responsibilities include collection of the obligations of Defendants. My job requires me to know, and I am familiar with the record keeping methods used by those individuals who, in addition to me, are responsible for making bookkeeping entries in Plaintiff's business records as they relate to this case. My personal knowledge of the above facts is based on my experience as director of litigation and recovery for SRE.

4. I have personal, first hand knowledge of all facts set forth in this Declaration, either based upon my personal observations and/or review of the business records of Plaintiff, my familiarity with the procedures of Plaintiff based upon my tenure as director of litigation and recovery.

5. Based upon my observations and my training, I know that the business records of Plaintiff referred to in this declaration and all of them, are prepared and kept by Plaintiff in the ordinary course of Plaintiff's business. The entries made in such business records were made at or near the time of the occurrence of the events recorded. Furthermore, these business records are in all instances kept in a safe and secure location. All of said business records were made by persons who have a business duty to Plaintiff to make such records.

6. The facts upon which my personal knowledge of Plaintiff's collection efforts (including my personal knowledge of the business records relating thereto and the procedures used by the Plaintiff when it handles Records and/or records information regarding leases, and how I have become one of the Plaintiff's custodian of records) are set forth as follows:

(a) <u>Original Lease Documents:</u> It is the business practice of Plaintiff that leases and other related documents are executed by the lessee(s) and guarantors. Once

3

---

the original lease documents evidencing the lease transaction between the Plaintiff's or its assignors and its borrowers and guarantors are executed and/or assigned to SRE, original lease documents are part of Plaintiff's records, they are delivered to designated individuals, whose duty it is to receive the executed original lease documents and safeguard them. If all credit requirements are met and the documentation appears to be in order, the lease and related documents are accepted and executed by an authorized representative of Plaintiff. The fully executed lease and related documents are then scanned into Plaintiff's computerized account information system. Once scanned into the computerized account information system, the document image is available for download. In the event that an account becomes delinquent and there is a need to initiate legal action, copies of the lease and related documents are downloaded from Plaintiff's computerized account information system for forwarding to legal counsel, which was done in this case. The original lease documents are safeguarded by transferring them off site to a secure document storage facility. All of the lease documents, referred to in this declaration were procured, scanned, stored, downloaded and safeguarded in accordance with Plaintiff's business procedures policy as outlined briefly above.

(b)     <u>Records Other Than Original Lease Documents</u>: Hard copies, if any, of credit files concerning each lessee, and any guarantors, are kept by Plaintiff in secure locked files in its offices. Plaintiff's credit file may contain documents received from the borrower or any guarantors including financial statements, tax returns, correspondence, materials about the borrower, and other documents generated by Plaintiff in the process of handling the lease, such as credit reports,

memoranda, notes, call reports, financial analysis of the borrower and any guarantors, lien searches, title reports, and the like. . These records are available to authorized individuals working on the file, but will only be used by the authorized individuals who have a business need to have the credit file or to look at the records and/or information therein. .

(c)     <u>Lease History:</u> Plaintiff maintains detailed and comprehensive computerized records of all financial transactions between it and its lessee(s) and any guarantors. Authorized individuals input data into Plaintiff's computer system reflecting advances, interest rate accruals, borrower payments and other financial transactions, which computer system is specifically designed to record advances, rates and rate changes, and payments for each particular lease. Plaintiff's computer system also tracks whether leases are current and other lease-related information. Only a limited number of designated employees of Plaintiff and individuals responsible to Plaintiff are authorized by Plaintiff to enter the data. Whenever a payment is received on a lease, that payment is applied from the date received, into Plaintiff's computer system by persons authorized, and who have a business duty to Plaintiff, to do so in their ordinary course of business.

(d)     <u>Transfer of physical file</u>: Once a problem exists in a lease relationship, it is Plaintiff's usual and customary practice to transfer the handling of the lease to authorized individual responsible to Plaintiff who specializes in the handling of problem credits. In that regard, the credit file is made available to those authorized representatives who maintain that information in the manner described above

5

(e) <u>Transfer to me.</u> My present position requires that when a delinquent account is first assigned to me, I assume full responsibility and authority for every phase of the post-delinquency collection process, including review and recommendations relating to requests for repossession, renegotiating extensions and workouts where appropriate. In addition, where appropriate, I oversee necessary legal proceedings involving outside counsel. As part of my duties and in furtherance thereof, I am given control and custody of all documentation relating to an account, including, but not limited to, account information, leases, guaranties, payment history records, financial reports, credit reports, communications and notes. I check the application of payments to the computer system from time to time. Upon receipt of a report evidencing the specific delinquent lease, a collector or I will contact the debtor to determine what arrangements can be made for payment. If no payment is received, a demand letter will be sent to the debtor. If no response is received, the account will be accelerated. Once all efforts to obtain payment are exhausted, I will review the account and make a determination as to whether it should be written off, sent to a collection agency, whether the collateral should be repossessed, or whether the matter should be sent to our attorneys for collection.

(f) <u>Trustworthiness:</u>    The foregoing methods have proven to be an accurate and trustworthy means for Plaintiff's maintaining Records and recording information about the Plaintiff's leases and its lessees, guarantors, and other customers. These records are utilized by individuals responsible to Plaintiff, including me, on a daily basis in the discharge of their normal and ordinary functions, and such records regularly are relied upon and are an accurate and

1  proven means of reflecting the current situation with regard to each borrower and
2  any guarantor.
3  7.  The facts set forth below are all derived directly from my review of the
4  business records of Plaintiff, as contained and displayed in Plaintiff's
5  computerized account information system, and comprise nothing more than a
6  summary of the existence or non-existence of a entry or record in that system.
7  Where calculations are set forth, they are based solely upon the information and
8  entries contained in Plaintiff's computerized account information system, and
9  could be duplicated, with considerable time and effort by any person who chose
10 to do so with either a pencil and paper or a calculator.

**Equipment Lease Agreement**

8.  Plaintiff's records reflect that on or about May 11, 2004, Plaintiff entered into a Equipment Lease Agreement ("ELA") with Defendants, TOUCH ASIA OUTSOURCING SOLUTIONS, INC., dba TOUCH ASIA CALL CENTER, INC.; a California Corporation, RUDY NGAW; STRATASOFT, INC.; INX., a Texas Corporation formerly known as I-SECTOR CORPORATION wherein Plaintiff agreed to lease certain equipment to TOUCH ASIA pursuant to the EQUIPMENT LEASE AGREEMENT ["ELA"], which TOUCH ASIA intended to utilize as part of its business. A true and correct copy of the ELA, is attached hereto, marked Exhibit "A", and incorporated herein by this reference.

**UCC Financing Statements**

9.  In order to evidence its rights in the leased equipment under the ELA, Plaintiff caused to be filed UCC-1 Financing Statements. In order to further secure payment under the ELA, True and correct copies of the UCC-1 Financing

Statements are attached hereto collectively, marked as Exhibit "D", and incorporated herein by reference

**Default**

10.  Plaintiff's records reflect that the ELA Plaintiff has received no payments for any of the remaining fourteen (14) months, as required under the ELA.

11.  Pursuant to the terms of the ELA, Plaintiff has declared the entire unpaid balance due under the ELA to be $555,000.00.

12.  For this account, Plaintiff maintains a Balance Due Summary. Attached hereto, marked as Exhibit "H", are true and correct copies of the Ledger for this account.

13.  The ELA provides that TOUCH ASIA will pay all taxes, fees, and liens levied on the equipment. The exact amount of such taxes, fees and liens are at this time unknown and Plaintiff will ask leave to amend this Complaint to allege same with certainty when ascertained.

14.  The ELA provides that TOUCH ASIA shall pay all costs and expenses, including reasonable attorneys' fees, incurred by Plaintiff in exercising any of its rights or remedies under the Agreement.

15.  The ELA further provides that whenever any payment is not made by TOUCH ASIA when due, TOUCH ASIA agrees to pay late charges equal to five (5%) percent of the amount of any late payment (but not less than $10.00), but only to the extent permitted by law. The exact amount of late fees are at this time unknown and Plaintiff will ask leave to amend this Complaint to allege same with certainty when ascertained.

16.  The ELA also provides that, in the event of default, TOUCH ASIA is obligated to pay interest from the date of default at the customary market rate, to which industry standard is 18% per annum, but in no event more than the maximum rate permitted by law. The exact amount of interest is at this time unknown and Plaintiff will ask leave to amend this Complaint to allege same with certainty when ascertained.

**Guaranties**

17.  On or about May 11, 2004, Defendant RUDY GNAW executed a Guaranty in favor of Plaintiff wherein he guaranteed all of the obligations of TOUCH ASIA to Plaintiff under the terms of the Lease for consideration, executed guaranties wherein they guaranteed the payment under the ELA in the sum of $555,000.00 plus all expenses of obtaining or endeavoring to obtain payment or performance under the ELA, or security therefore, or of enforcing the Guaranties, including attorneys' fees and other legal expenses.  A true and correct copy of the Guaranty is attached to the Complaint as Exhibit "C" and incorporated herein by this reference,

18.  TOUCH ASIA has defaulted in its payments under the terms of the ELA and, although Plaintiff demanded that Defendant Guarantor, RUDY GNAW, pay the amounts due under the Guaranty, they have failed to do so. Consequently, the sum of $555,000.00, together with the other sums due pursuant to the Guaranties, including attorneys' fees and costs, are due and payable from Defendant Guarantors to Plaintiff.

**Value and Location of the Equipment**

20. My position requires and my responsibilities include, appraising, repossessing, marketing and reselling both repossessed and returned inventory. I have been involved with asset management for many years on a daily basis. I interact with the specialists of the type of equipment involved in this matter on a daily basis. In connection with this action, I ordered a desktop appraisal of the subject Equipment. A true and correct copy of the desktop appraisal concerning the Equipment is attached hereto, entitled "the Declaration of DENNIS ROBERT McBROOM. It is the opinion of the appraiser that the forced liquidation value of the subject Equipment is less than $1,000.00.

**Finance Lease**

21. The equipment leased is certain telecommunications equipment. Plaintiff is a finance lessor as defined in Article 10103(a) (7) of the Uniform Commercial Code. Plaintiff's sole business is the financing of equipment designated by its lessees or obligors through the vehicle of equipment leasing and secured lending.

22. Plaintiff relies upon its lessees to select the type, quality and quantity of equipment the lessee deems necessary for his use.

23. Pursuant to the provisions of the ELA, Plaintiff purchased the equipment, and put the Defendants TOUCH ASIA into possession of said equipment. Plaintiff was not required to do any other act pursuant to the terms of the lease than those set forth above.

25. The equipment, which was leased by Plaintiff to the Defendants, was selected by Defendants TOUCH ASIA, as was the vendor of their choice, co-Defendant STRATASOFT, and Plaintiff herein.

26. In particular, in the ELA with TOUCH ASIA, attached as Exhibit "A" and incorporated herein by reference, provides in paragraph 2 that Defendants requested the particular type and quantity of the equipment leased to them and that Plaintiff had nothing to do with the selection, manufacturer or supply process. In this particular instance, the Defendants chose the equipment to be leased, and designated from whom Plaintiff was to purchase the equipment.

27. The records of Plaintiff do not reflect that Defendants ever consulted with any employee of Plaintiff for determining whether or not the equipment worked and was appropriate and fit for the purpose for which they intended it to be used.

28. The purchase and lease of equipment by Plaintiff was NOT an "arms length transaction" but a detailed verbal and emailed agreement for requirement of payment by the Plaintiff to Supplier "Stratasoft" using "Stratasoft" standard office procedures set up to work with a leasing company for ownership through standard business practices ensuring the purchase and ownership for the plaintiff. Owning the equipment and lease it to defendant negotiated and consummated in the ordinary course of business. There were no other monies paid to Plaintiff or agreements entered into with Plaintiff, except those specified in the lease.

29. Plaintiff funded to STRATASOFT, the purchase price of the equipment, subsequent to the execution of the ELA with TOUCH ASIA, and the delivery and acceptance of the equipment was made at the place of Defendant TOUCH ASIA'S business. The delivery and acceptance receipt of said equipment in the ELA, is in the sole possession of co-defendant STRATASOFT which represents that the equipment was delivered, installed and accepted, that the Lessee had a

reasonable time to inspect it and that it was in good condition and satisfactory for all purposes, as set forth in the Declaration of Noreen Rucinski.

**DELIVERY AND ACCEPTANCE CERTIFICATE:**

30. With respect to that certain Equipment Lease Agreement, dated on or about May of 2004, between SRE Plaintiff and TOUCH ASIA ("Lessee"), Lessee by its signature hereto certifies that it has a reasonable period of time to inspect the System and that each item of the System has been delivered, installed and accepted in July of 2004 by TOUCH ASIA, and delivered by STRATASOFT. The delivery and acceptance agreement is in the sole possession of co-Defendant STRATASOFT and this defendant has failed to produce said certificate, necessitating this action herein. A true and correct copy of the running invoice, and acknowledgement of receipt of equipment by Touch Asia, is attached hereto as exhibit "B"

31. On or about May 06, 2005, I sent a final demand for payment and forfeiture of equipment to the Defendant TOUCH ASIA, and it's agent RUDY GNAW, in attempt to informally resolve this dispute, however, these Defendants refused to comply with my request and therefore have necessitated this action herein. A true and correct copy of my demand for payment to Defendants, TOUCH ASIA, and its agent RUDY GNAW, on May 06, 2005, is attached hereto as exhibit "D"

32. On or about, December 27, 2005, I received correspondence from counsel for Defendant, STRATASOFT and its agents, informing me that any further request for payment or delivery of the equipment specified in the ELA to my place of business would be futile, therefore necessitating this action herein. A true and

1  correct copy of the contract repudiation by Defendants, STRATASOFT, and its
2  agents, on December 27, 2005, is attached hereto as exhibit "F"
3  33.   On or about, June 19, 2003, Plaintiff and Defendant COLO 6 LLC, and its
4  agent NAVROZ HAJI, entered into a written lease waiver agreement for certain
5  equipment related to this action herein.  A True and correct copy of the written
6  and executed lease agreement between Plaintiff and Defendants COLO 6 LLC,
7
8  and NAVROZ HAJI, is attached hereto as exhibit "G"

9  I declare under penalty of perjury under the laws of the State of California
10 and under the United States of America that the foregoing is true and correct.
11 Executed this 22 day of JANUARY at SAN DIEGO, CALIFORNIA.

By:

Noreen Rucinski,
Dir. Strategic Business Development
SCHNEIDER RUCINSKI ENTERPRISES
Declarant

13

DECLARATION OF NOREEN RUCINSKI