**Noreen Rucinski**
Dir. Strategic Business Development
Schneider Rucinski Enterprises
3344 N Mt. View Dr
San Diego CA 92116
619-282-7977
Plaintiff in Pro Per
Appearing *pro se*

NUNC PRO TUNC

MAR 2 8 2008

FILED

APR - 3 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SCHNEIDER RUCINSKI ENTERPRISES,  )
            )
            Plaintiff,     )
            )
vs.           )
            )
TOUCH ASIA OUTSOURCING    )
SOLUTIONS, INC., dba TOUCH ASIA  )
CALL CENTER, INC.; RUDY NGAW;  )
STRATASOFT, INC. PACIFIC CALL  )
CENTERES; LANE MCCARTY    )
individually and as an employee and/or  )
agent of STRATASOFT, INC.; JASON  )
PACE individually and as an employee  )
and/or agent of STRATASOFT, INC.;  )
MIKE BRIDGES individually and as an  )
employee and/or agent of STRATASOFT,  )
INC.; MICHIEL BRIDGES, JR.,    )
individually and as an employee and/or  )
agent of STRATASOFT, INC.;  INX, INC.,  )
a Texas Corporation formerly known as I-  )
SECTOR CORPORATION; COLO 6 LLC,  )
a California Corporation, and NAVROZ  )
HAJI, an individual, and DOES 1 through  )
20, inclusive,      )
            )
            Defendants.    )
_____

Case No.:  08 CV 0138 WQH POR

Date:
Time: 11:00  a.m.

Judge: Hon. William Q Hayes

**PLAINTIFF'S MOTION FOR EX PARTE SUPPLEMENT TO MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FROM INX**

SCHNEIDER RUSINISKI ENTERPRISES ("SRE") respectfully submits this Exparte and supplement, to Memorandum in Opposition to Defendant's Motion to Dismiss.

SRE made calls with the clerk's office and Judge Hays clerk Robert on February 26 2008, upon receipt of the Motion to Dismiss from the defendants INX.   This call was *solely Regarding Verbiage* on motions "NO ORAL ARUMENTS" the MOTION FOR DISMISSAL INX.  At that time I informed both clerks that I was requesting oral arguments for the Calendared and time

allocated : March 24, 2008 at 11 am.  Following the local rules, allowing for time frame to inform the Attorneys, delivered, stated for The Motion for Dismissal filed by the defendant INX, on February 19th 2008.  Where as these rules and procedures are new to me,  I reviewed local procedures

Civil rule 7.1 ( c. If either party indicates a willingness to submit a motion for decision without oral argument, the adverse party shall promptly, but in any case not later than four (4) calendar days before the hearing date, notify the law clerk of the assigned judge, by telephone, whether or not there is concurrence in having the motion decided without oral argument. If so, the matter may be removed from the motion hearing calendar, at the court's discretion, and the parties shall be so notified. If the adverse party does not concur in submission of the motion without oral argument, the matter may remain on the calendar, for such argument, if any, as the court may deem appropriate under the circumstances)

I have highlighted the applicable area, where it instructs me, "as the adverse party, if I don't concur (agree) in the submission of the motion without an oral argument, the matter may remain on the calendar".   "I would be notified" if it was taken off calendar, I was not.  I request the motion to again, to be heard.

 I am requesting the courts to honor this, and hereby asking, to be heard Orally at the earliest time for the courts.  In view of the facts of not being heard, or possibly to "not be heard", I have submitted this supplemental response to INX Motion to Dismiss.

**INTRODUCTION**

In May of 2004, INX's subsidiary (INX), called from the Texas soliciting for financing and/ or purchase of INX Call Center, software, licenses, and hardware network system, configured via, telecommunications computer (access devices) "equipment" to SRE offices in San Degio California.  INX requested SRE to finance "equipment" to be placed in the United States at a common telecommunications hotel, ( colo facilities). SRE informed both verbally and on emails, stated, that it does NOT do sales lease backs. SRE does NOT allow or do transactions, with any suppliers (INX), that allow the customers that retain title. SRE stated it would only purchase, hold title, have a condition of recourse as applicable to industry standard, similar, to the financing company agreements that declined this deal with in INX in 2004. *Electronic Fund Transfer Act of 1978 ACT U.S.C. Section 7001 (sub- sec- 7003  Section 2 Title 18 UC Codes Section 102*

 We believe we will be able to prove, upon discovery, and at trial, that all defendants, are party to the following actions, with regard to Federal Statute of Frauds § 2-212-§ 2-716, Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.* A, Electronic Fund Transfer Act of 1978 ACT U.S.C.

Section 7001 (sub- sec- 7003  Section 2 Title 18 UC Codes Section 1029  (relating to fraud and related activity in connection with Access Devices.  section CC-1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 section 1029 ( section 1343, section 1344 (relating to financial institution fraud), sections 2314 and 2315, (relating to interstate transportation of stolen property section 1956 (relating to the laundering of monetary instruments). As stated in the compliant, done by INX.

   INX independently contributed, as well, as in concert, not only with it's subsidiary and it's employees' INX agents, Bridges, Pace, Lane, and McCarthy, at the onset,  induced, defrauded, an conspired against SRE after accepting and using the funds, depriving SRE of the basic privileges of ownership and control and return on investment of the Stratasoft, computer, software and licensed systems, purchasing by SRE. SRE intends to prove through discovery that the defendant has INX has committed,  Internet Fraud, Mail Fraud, Civil Conspiracy, Misrepresentation,  Inducement, Intentional Interference with an Economic Business , UNFAIR BUSINESS PRACTICES PURSUANT TO Business & Professions Code § 17200 et seq.  These actions, circumvents the integrator  ("SRE")  of the purchased a software licenses.  The Deceit, Misrepresentation, Conversion and Interference, caused and creates, a  ZERO (0) Value of any Software, making it worthless, even if the hardware, was returned. Where as SRE based profiets on *representations* from INX's agents, in it's efforts to further confirm, and apply it's fraudulent inducement, made promises of resale (recourse) (as requested) by SRE of the INX system in this high Risk customer brought by INX (from the start). We will show from the time the funds were transferred from the California bank to the Texas location of Stratasoft offices and duly deposited.  INX breached it's first responsibly, Fiduciary duty, it did NOT send a receipt, nor confirmation or Invoice with serial numbers, that would allowed  SRE ownership. SRE asked several times with demands (in complaint).  INX, did NOT  install requested remote, software cutoff (dongle) in the switch as represented to SRE by INX agents, (shown in the maintenance agreement) prior to disbursement of the monies. That lack fudiuary responsibility cause irreparable injury, that was to have placed the ownership, and toggle in the name and express use of "ONLY" SRE, allowing "quiet enjoyment" as termed and identified in the *Uniform Commercial Codes 1 and 2-202-209.*  Instead, SRE was

1  deprived of the money, ownership, the customers using the system and any form of quiet

2  enjoyment. The losses caused irreparable harm both monetarily and emotionally, do not make up

3  for the losses of profits from the time the funds were placed in INX's account to date. The future

4  profits, the current and future customers of SRE were, and are still <u>unable</u> to partition, rent, lease,

5  use, said equipment, software and licenses, that were part of the the purchase. This agreement was

6  memorialized and identified both on emails and in writing on the side of SRE and agreed to by INX

7  memorializing with the checks. These funds and what they were used for, are completely unknown

8  to SRE in origin, from the time of INX deposit of checks, still SRE has now and then never had

9  anything to show for it. No equipment, no licenses, no software, verification and or users, no

10  customers, no write off, nothing to show. All of which INX has had since the funds were deposited

11  in INX in 2004.

12

## STANDARD OF REVIEW

13
14  In considering a motion to dismiss, a court must take the allegations of the complaint at face value
      and must construe them favorably to the plaintiff. The allegations in the plaintiff's complaint are
15  presumed true. Dismissal for failure to state a claim upon which relief may be granted does not
16  require appearance, beyond a doubt, that plaintiff can prove no set of facts in support of claim that
17  would entitle him to relief. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). A court should
18  not grant a motion to dismiss unless it appears beyond doubt that the plaintiff could prove no set of
      facts supporting the claim, which would entitle plaintiff to relief. *Huxall v. First State Bank*, 842
19  F.2d 249, 250- 51 (10th Cir. 1988). The court's function on a Rule 12(b)(6) motion is merely "to
20  assess whether the plaintiffs complaint alone is legally sufficient to state a claim for which relief
21  may be granted." *Miller*, 948 F.2d at 1565. The U.S. Supreme Court in *Bell Atlantic Corp. v.*
22  *Twombly,* 127 S.Ct. 1955 (2007 ) The Court held that complaints must now state enough facts to
23  make it **plausible** that the plaintiff is entitled to relief. Put simply, the facts stated in a complaint
24  must make the allegations alleged plausible under the "new test" announced by the Court as
      opposed to merely <u>possible</u> as previously would pass muster under *Conley.* SRE's complaint
25  alleges sufficient facts that are plausible to show that INX breached their duty, reasonability, under
26  the agreement and SRE continually suffers due to their actions
27

28

4

-------------------------------------------------------------------------------------------------------

**ARGUMENT**

**Subject Matter Jurisdiction**

INX claims in its Motion to Dismiss that the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. The enabling statute for federal question jurisdiction, 28 U.S.C. § 1331, provides that the district courts have subject-matter jurisdiction in *all civil actions arising under the Constitution, laws, or treaties of the United States.* SRE's claim is within the confines of a constitutional law, specifically the last part of Amendment V of the bill of rights which states that:

No person shall be deprived of life, liberty, or property, *without due process of law; nor shall private property be taken for public use, without just compensation.*

Again the Plaintiff re-affirms that due to INX's actions they are still being deprived of their "right" to their property the "equipment, software, licenses", "right" to $128,000.00 *28 U.S.C. Sec. 1332.* plus all interests from INX actions as a clearinghouse with regard SRE monies, and returns, fines and restitution are the actions for relief, in accordance with the California and US Codes, which this court has jurisdiction in hearing. For the second and third cause, *Federal Statute of Frauds § 2-212-§ 2-716, Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et seq. A, Electronic Fund Transfer Act of 1978 ACT U.S.C .*

As stated above that on or about June 28th 2004 INX sent the property : licenses, software and hardware, "Equipment" over state lines as well as over telephonic communications lines, and Mailed to another client of INX. Therefore the court does have subject matter jurisdiction over this dispute and the defendant's claim "of lack of subject matter jurisdiction" should be dismissed.

**III. JURISDICTION**

Diversity Jurisdiction

INX has continues to make further accusations regarding, diversity jurisdiction. SRE's complaint meets the requirements of diversity jurisdiction as the amount in dispute is greater than $75,000 and is proper pursuant to *28 U.S.C. Sec. 1332.* The claims in SRE's complaint arise out of Inter-State Transactions, California Unfair Business Practices and Electronic Transfer Act, etc. INX is a corporation located and doing business in Texas, SRE is a company doing business in California.

This is keeping within the spirit of "The framers of the Constitution" were concerned that, where a case was brought in one state involving parties from both that state and another, the state court might be biased towards the party from its own state. Congress first exercised that power and granted federal trial district courts diversity jurisdiction in the Judiciary Act of 1789. SRE brought this action in the proper venue and based on the above has met the burden to show that the parties that this dispute is from different states, the amount in dispute is greater than provided in the statute. Therefore INX's motion to dismiss based on Diversity Jurisdiction should be not granted. INX further is guessing at locations of any other defendant without proof, of other defendants. However, in efforts to dispel any thoughts of not responding to those claims from INX, Touch Asia, Rudy Ngaw, has not been found per investigation that are on going. According to Press releases (Exhibit #1) filed in 04 and 06 that state "Touch Asia and Rudy Ngaw", transits between the USA and the Philippines with no other current location in California according to the process servers and services hired to find him. According the Rules both local and federal, SRE should file with last known location, to get to the discovery stage. At this time Motions have been requested to serve the State *pursuant to Section 416.20 of the Code of Civil Procedure* to file in default Touch Asia/Rudy Ngaw. INX challenges another defendant as stated in reply as to Diversity jurisdiction. It would appear that INX in their haste to have this motion dismissed, has solely relied on the complaint that have *would* later been proven at discovery. US COLO, COLO6 are both in fact Nevada companies, with Nevada bank accounts, Nevada Head of operations living and residing in Reno Nevada. Leaving no diversity, Offices in multiple states does not show diversity. They are in Nevada, head office, Satellite offices in California and Washington. State of Nevada Attached Exhibit #2

## CONCULSION

INX knows exactly what is at issue in this case and alleged in SRE's Complaint, INX has acted with the specific intent of causing SRE the precise type of damages SRE has alleged. Through its action outside and now in side this honorable court, INX continues to not recognize SRE in any capacity. INX has decided to not only waste SRE's time in an agreement that it had not intent in honoring but now chooses to waste this courts time with an un-supported motion to dismiss. SRE has repeatedly demonstrated by detailed factual and documented evidence to support its responses, where INX has done nothing but to state unsupported allegations in their motion to dismiss. However, INX was successful in anticipating these types of claims which were demonstrated in its sale of their

subsidiary who is a co-defendant in this action. In having several other like and similar filings against the company, in 2004, 2005, 2006 in both Florida and Texas for similar accusations INX decided to create a trust account to protect their transaction. (INX's K8 shows that any filing's before, January 26 2008, would be subject to disbursement from trust account for such types of disputes) It is clear that INX engages in these types of transactions and knows how to protect themselves, a protection that was not afforded to SRE.  Again, SRE has met the pleading requirements for its claims against INX. INX's Motion to Dismiss should be denied and SRE should be allowed to continue its actions against this defendant. For all of the foregoing reasons, we submit that INX's Motion to Dismiss should be denied.

DATED this  28th day of March 2008      .

By:  _____

On behalf of Schneider Rucinski Enterprises

Noreen Rucinski

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of March 2008, I caused to be mailed a true and correct copy of the foregoing to the following by the method described below and I am over the age of 18.:

*By Mail Delivery:*

*    BY U.S. Mail, postage prepaid:*

_____    Fred Rucinksi

# U.S. COLO. LLC.

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | **Active** | File Date: | **5/10/2000** |
| Type: | **Domestic Limited-Liability Company** | Corp Number: | **LLC4422-2000** |
| Qualifying State: | **NV** | List of Officers Due: | **5/31/2008** |
| Managed By: | **Managers** | Expiration Date: | **5/10/2500** |

## Additional Information

| | |
|---|---|
| Name Consent Date: | 05/10/2000 |

## Resident Agent Information

| | | | |
|---|---|---|---|
| Name: | **MAX MCCOMBS** | Address 1: | **228 ARLETTA ST** |
| Address 2: | | City: | **RENO** |
| State: | **NV** | Zip Code: | **89512** |
| Phone: | | Fax: | |
| Email: | | Mailing Address 1: | **POB 5966** |
| Mailing Address 2: | | Mailing City: | **RENO** |
| Mailing State: | **NV** | Mailing Zip Code: | **89513** |

View all business entities under this resident agent

## Officers     ☐ Include Inactive Officers

### Manager - RICK FISHER

| | | | |
|---|---|---|---|
| Address 1: | **650 S GRAND AVE** | Address 2: | |
| City: | **LOS ANGELES** | State: | **CA** |
| Zip Code: | **90017** | Country: | |
| Status: | **Active** | Email: | |

### Manager - NAVROZ HAJI

| | | | |
|---|---|---|---|
| Address 1: | **650 S GRAND AVE** | Address 2: | |
| City: | **LOS ANGELES** | State: | **CA** |
| Zip Code: | **90017** | Country: | |
| Status: | **Active** | Email: | |

### Manager - MAX MCCOMBS

| | | | |
|---|---|---|---|
| Address 1: | **PO BOX 5966** | Address 2: | |
| City: | **RENO** | State: | **NV** |
| Zip Code: | **89513** | Country: | |

Stratasoft Is Awarded Another International Call Center Contract in Asia

**Integration Fulfills Customer's Need for End-to-End IP Call Center**

HOUSTON--(BUSINESS WIRE)--Sept. 14, 2004--Stratasoft Inc. ("Stratasoft"), a wholly owned subsidiary of I-Sector Corporation (AMEX:ISR - News) and a worldwide provider of contact center solutions, announced that its award-winning StrataDial? VC2 - Virtual Contact Center software and StrataVoice? Notification System suite has been awarded a $285,000 USD contract to provide Stratasoft's StrataDial Call Center technology for TouchAsia.

TouchAsia's offices are located at a high-rise in Manila's prestigious central business district. The building provides back-up generators and round-the-clock security, ideal for its 24 x 7 operations. Aside from offering a turnkey contact center outsourced solution, TouchAsia also provides solutions to meet other contact center requirements.

The telecom network is engineered to have redundant connectivity between TouchAsia's U.S. and Philippine offices. The facilities in Los Angeles provide the capability to have multiple routes for long distance calls, and to manage toll-free and local access number call routing to the Manila site.

TouchAsia is very pleased and excited about the functionality the StrataDial? VC2 in conjunction with what VoIP technology offers. Rudy Ngaw, president, commented, "We evaluated over ten prospective vendors and Stratasoft was by far the vendor and product of choice. We knew that the purchase of a Stratasoft StrataDial system would allow our company to grow while providing better quality of service to our customers while we receive excellent support and service."

Jason Pace, vice president of sales and marketing for Stratasoft, comments, "We are very excited to be working with TouchAsia and the future growth they are presenting. They are equipped with the necessary experience to manage and continually build a world-class company. The management team is skilled, energetic and committed both to the tasks at hand and to the company's future."

**About Stratasoft Inc. and I-Sector Corporation:**

Stratasoft is a wholly owned subsidiary of Houston-based I-Sector Corporation (AMEX:ISR - News) and is an acknowledged technology leader in professional contact center systems. Stratasoft has a comprehensive patent portfolio that includes predictive dialing, predictive dialing algorithms, contact center database management, contact center campaign scripting and contact center management systems. Its product line consists of StrataDial?.VC2 - Virtual Contact Center, a 2002 Product of the Year award winner from both Customer Inter@ction Solutions? and Communications Solutions? magazines, and StrataVoice?, an Unattended Message Notification System. All of Stratasoft's products incorporate functionality that is 100% customer-driven and are designed to maximize productivity in any contact center application. Learn more about Stratasoft Inc. on the Web at www.stratasoft.com. Information about I-Sector Corporation can be found at www.I-Sector.com.

**Safe Harbor Statement:**

The statements contained in this document that are not statements of historical fact, including but not limited to statements identified by the use of terms such as "anticipate," "appear," "believe," "could," "estimate," "expect," "hope," "indicate," "intend," "likely," "may," "might," "plan," "potential," "project," "seek," "should," "will," "would," and other variations or negative expressions of these terms, are "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995 and involve a number of risks and uncertainties. The actual results of the future events described in the forward-looking statements in this document could differ materially from those stated in the forward-looking statements due to numerous factors including:

- Market and economic conditions
- Risks associated with entry into new markets
- The ability to attract and retain key management, sales and technical staff
- Unforeseen costs and results related to acquiring and integrating new businesses
- Catastrophic events
- Uncertainties related to rapid changes in the information technology industry

Recipients of this document are cautioned to consider these risks and uncertainties and to not place undue reliance on these forward-looking statements. The company expressly disclaims any obligation or undertaking to update or revise any forward-looking statement contained herein to reflect any change in the company's expectations with regard thereto or any change in events, conditions or circumstances upon which any statement is based.

**Contact:**
Stratasoft Inc., Houston
Jason Pace, 713-795-2607
Jason.Pace@Stratasoft.com
or
Investor Relations:
PR Financial Marketing LLC.
Jim Blackman, 713-256-0369
jimblackman@prfinancialmarketing.com

**Touch Asia NEW Call Center Site in Cebu City, Philippines**
New Call Center in Cebu Philippines

( EMAILWIRE.COM, July 27, 2004 )  TOUCH ASIA OPENS NEW CALL CENTER SITE IN CEBU

Leveraging on the fast growing call center industry in the Philippines, Touch Asia Contact Solutions (Phils.), Inc. is opening a new call center site in Cebu this August. This is in addition to the Head Office in California, USA and the call center in Makati City.

Touch Asia, a Filipino-owned company, joins the increasing number of call centers who have set up and located their additional call center sites in Cebu, the Queen City of the South. Why Cebu? Cebu City in the Visayas is a suitable place for putting up business in terms of manpower, stability and infrastructure. Cebuanos have a firm grasp of English because it is their second language. Among the cities in the South, Cebu also has the most stable communications infrastructure making it suitable for call center firms to locate there. Aside from these, there are also tremendous cost-saving possibilities.

According to Touch Asia's General Manager, Mr. Allan Michael Ebue, the opening of a new site in Cebu was necessary to accommodate the growing number of Touch Asia's clients within the US, UK and Australia. Currently, the company is employing more than 300 contact center agents and employees in the recently-expanded Makati site at the Peak Tower, and will be doubling the number of employees when the Cebu site becomes fully operational.

The new site in Cebu has a seating capacity of 60 and will be up by early August of this year. The site can be immediately expanded up to 100 -150 seats, if and when necessary. The Cebu site is fully-equipped and is complete with the all the necessary facilities. The center is built according to international standards with state-of-art generators and backup contingency systems.

With its unique business model, Touch Asia is a total business solutions provider. Our vision is to become the premier provider of COMPLETE and INNOVATIVE contact center and outsourcing business solutions to meet the evolving business and telecommunication needs of today's ever changing world. We empower our clients and exceed their expectations by delivering high quality service with our unique business model, high-end technology and talented and pro-active manpower. Together with our international and local partners, who are among the best and experienced in their field, Touch Asia offers a wide range of products and services that can be tailor-made to fit our clients' business requirements.

Contact:
Touch Asia Contact Solutions, Inc.
Donna Caparas

donna.caparas@touchasia.com
http://www.touchasia.com/
Tel: 632 8482861

**Touch Asia Call Center, Cebu City, Philippines**
**Call Center Head Office moves to Cebu Philippines**

( EMAILWIRE.COM, DECEMBER 12, 2005 )   TOUCH ASIA MOVES HEAD
OFFICES TO THE CEBU CITY, PHILIPLINES

Touch Asia Contact Solutions (Phils.), Inc. is moving its head offices to Cebu this
December. This move is strategic, to work with the fast paced business model along with
colo facilities for the equipment in Seattle, New York and Los Angeles USA..

Touch Asia, a Filipino-owned company, who has joined some of the largest call center
service centers in the world, has brought their head offices to the Philippines as well.

Touch Asia's General Manager, Mr. Allan Michael Ebue, welcomes Mr. Rudy Ngaw
cofounder back to his home country. It is necessary for Mr. Ngaw to work and live in the
Philippines for so much of the year; we finally moved him here and welcome his family.

With the opening of new sites in Cebu, Touch Asia's clients within the US, UK and
Australia need someone who can raise the bar. The 300 contact center agents and
employees in both Cebu and the Makati site at the Peak Tower need operational hands on
support.

We cite the new press letter from August:
The new site in Cebu has a seating capacity of 60 and will be up by early August of this
year. The site can be immediately expanded up to 100 -150 seats, if and when necessary.
The Cebu site is fully-equipped and is complete with the all the necessary facilities. The
center is built according to international standards with state-of-art generators and backup
contingency systems.

With its unique business model, Touch Asia is a total business solutions provider. Our
vision is to become the premier provider of COMPLETE and INNOVATIVE contact
center and outsourcing business solutions to meet the evolving business and
telecommunication needs of today's ever changing world. We empower our clients and
exceed their expectations by delivering high quality service with our unique business
model, high-end technology and talented and pro-active manpower. Together with our
international and local partners, who are among the best and experienced in their field,
Touch Asia offers a wide range of products and services that can be tailor-made to fit our
clients' business requirements.

Contact:
Touch Asia Contact Solutions, Inc.
Donna Caparas

donna.caparas@touchasia.com
http://www.touchasia.com/
Tel: 632 8482862

**Table of Contents**

**Item 2.01 Completion of Acquisition or Disposition of Assets**
Under a Stock Purchase Agreement dated January 26, 2006 (the "Agreement"), INX Inc. (the "Company") sold all outstanding shares of its Stratasoft, Inc. subsidiary's common stock ("Stratasoft") to The Resource Group International Limited ("Buyer"). The sale was announced in the Company's press release dated January 31, 2006 filed as Exhibit 99.1 to this Form 8-K. Key terms of the Agreement are summarized as follows:

- All outstanding Stratasoft common stock was sold for a purchase price of $3,000,000, reduced by:
  - $800,000 placed in escrow, which is available to satisfy indemnified losses, if any, as defined in the Agreement.

  - $221,470 representing a preliminary net working capital adjustment, as defined. The working capital adjustment is to be finalized by March 27, 2006.
- The Company indemnified Buyer for losses as defined in the Agreement to a maximum of $1.4 million, inclusive of amounts placed in escrow. Excess funds held in escrow will be released on January 26, 2008 unless retained in escrow for potential indemnified losses as allowed in the Agreement under certain circumstances.

- The Company may receive additional consideration in the form of 10% of the outstanding Stratasoft common stock if revenue exceeds $10 million for any consecutive twelve month period within two years of closing.

- The Company may receive additional cash consideration if Stratasoft is sold by Buyer to another party for an amount in excess of $15 million.

Transaction costs of $614,209 are payable by the Company in connection with the transaction. Additional transaction costs of up to $120,000 are payable based on the Company's final purchase price.

**Item 9.01 Financial Statements and Exhibits**
(c) Exhibits

| Exhibit Number | Description |
| --- | --- |
| 2.1 | Stock Purchase Agreement by and among The Resource Group International Limited and INX Inc. dated January 26, 2006 |
| 99.1 | Press Release issued January 31, 2006 |

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

                                                      **I-SECTOR CORPORATION**

Date: January 31, 2006                    By: /s/ Brian Fontana
                                                      Brian Fontana
                                                      Chief Financial Officer