

Noreen Rucinski
Dir. Strategic Business Development
Schneider Rucinski Enterprises
3344 N. Mt View Dr.
San Diego, Ca 92116
619-282-7977
Plaintiff  Pro Per
Appearing Pro Se

# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Schneider Rucinski Enterprises , | ) Case No.: No. 08 CV 0138 WQH POR |
| A California Women Owned Small ( Sole Prop) Business, | ) **First Amended Complaint for :** |
| | ) **(1)Intentional Fraud& Intentional Misrepresentation** |
| Plaintiff, | ) **(2)Fraud and Deceit** |
| vs. | ) **(3) Constructive Trust Fraud** |
| | ) **(4) RICO** |
| Stratasoft Inc a Texas Corp, | ) **(5) Unfair Business Practices {Cal. Bus. &Prof. Code 17200 *et seq.*** |
| INX/I-Sector Inc a Texas Corp, | ) **(6) Intentional Interference with Contractual Relations** |
| U.S. COLO One Wilshire a LLC of Nevada | ) **(7) Negligent Misrepresentation** |
| Touch Asia | **(8) Injunctive Relief** |
| Defendant | **(9) Breach of Contract** |

**(10) Breach of Implied Good Faith**
**(11) Computer Fraud**
**(12) Fraudulent Inducement**
**(13) Telemarketing Fraud**
**(14) Warranty Fraud**
**(15) Breach of Fiduciary Duty**
**(16) Civil Conspiracy**
**(17) Fraudulent Conversion &Conveyance**
**(16) Breach of Guaranty**

## FIRST AMENDED COMPLAINT

1. In this amended complain, by Pro Se Plaintiff Noreen Rucinski, brings this action for civil remedies authorized by 18 U.S.C. §§ 1961 et seq.,  and other laws which includes remedies for treble damages and for all other relief which this Court deems Just under 18 U.S.C. §1964,(a) (c) to recover damages done to her business caused by the Defendants deliberate and tortuous acts

committed to do injury, harm and damage and to deprive the Plaintiff of the Ownership, Rights, Licenses, Property and Money.

## JURISDICTION AND VENUE

2. Plaintiff's federal claims for relief allege violations of RICO, 18 U.S.C. § 1961 *et seq.* The Court has jurisdiction over the subject matter of the action pursuant to 18 U.S.C. § 1961 *et seq.* (RICO), and 28 U.S.C. §§ 1331 (federal), 1337 (commerce), and 1367 (supplemental). The court also has jurisdiction of this lawsuit based on 28 U.S.C 1333 (diversity of citizenship) and is well over the $75,000.00 requirement of 28 U.S.C. Section 1332 injury at over $550,00.00 and state codes 49 U.S.C. § 319.

3. Personal jurisdiction and venue in this district are proper pursuant to 18U.S.C. §1961-5 (RICO) and 28 U.S.C. § 1391(b) because (i) the ends of justice require that the parties residing in other districts be brought before this Court; (ii) Defendants are found in, have agents, and transact their affairs in this district, and (iii) a substantial part of the events or omissions giving rise to the claims for relief occurred in this district. Personal jurisdiction is also proper in this district because Defendants were members of a conspiracy and one or more members of the conspiracy committed a substantial tortuous act in furtherance of the conspiracy in California.

4. Exclusive jurisdiction of Federal courts and venue in this district TITLE 47 § 227 (2)(4) Restrictions on Telephone Use: However , the use of exclusive Jurisdiction would not be needed if personal jurisdiction and RICO are used would apply depending on The district courts of the United States, the United States courts of any territory, and the District Court of the United States for the District of Columbia shall have exclusive jurisdiction over all civil actions brought under this subsection. Upon proper application, such courts shall also have jurisdiction to issue writs of mandamus, or orders affording like relief, commanding the defendant to comply with the provisions of this section or regulations prescribed under this section, including the requirement that the defendant take such action as is necessary to remove the danger of such violation. Upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond.

# INTRODUCTION

5. These corporate Defendants have established themselves as Defrauders and Swindlers, USC TITLE 18 § 1341.  The Defendants, in the big picture are the suppliers, taking (investment) funders money and claiming it for their own, becoming keepers of the "sale of Goods".  The defendants, by engaging and conducting themselves as the "enterprise" either independently or with others inside their companies, thereby create a real and or implied "enterprise" arising from "goods for paid" by the Plaintiff and other Plaintiffs.  Jason Pace, Lane McCarthy and Michael Bridges that all worked for the Supplier Defendant Stratasoft are the tools which conspired this activity of RICO:  processes of Fraud, Deception, racketeering and Interference with Economic Advantage. (the declaration of the Plaintiff is with this complaint)

6. In order to explain the "BIG PICTURE" the Defendants will have role names, since it is important to understand the role they are playing in this on going scheme

.

- StrataSoft Inc - to be known as the SUPPLIER DEFENDANT,
- U.S. COLO One Wilshire- to be known as the LANDLORD DEFENDANT
- US Asia Tel – to be known as SUPPLIER CLIENT Associate in fact
- INX I-Sector- SUPPLIERS PARENT DEFENDANT

# PARTIES
## The Plaintiff

7. Plaintiff Noreen Rucinski is a California citizen and Acknowledged-Women Owned Small Business of Schneider Rucinski Enterprises.  Plaintiff's principal place of business is located at 3344 N Mt View Dr San Diego Ca. 92116.

## The Defendants

8. Defendant Stratasoft INC.'s is a Texas corporation, (to be known as Supplier Defendant) has principal place of business located in Harris County, Texas. Stratasoft is a manufacturer of Hardware, software, licensed predictive Dialers and or Call Center Telephony Platform equipment.

9. Defendant INX INC. is a Texas Corporations (to be known as Parent Defendant) and has a principle place of Business in Harris County Texas.

10. Defendant US COLO One Wilshire (to be known as COLO Defendant) is a Nevada company Registered with a Foreign LLC, it primary place of business in Nevada.  It has three closed door Co- Location (**Colo**) facilities for leasing of network and connectivity to Telecommunications Carriers in Los Angeles, Seattle, and Nevada. The main office is in Nevada.

11. Touch Asia is a suspended defunked LLC with unknown current domicile.

**Background**

12.  After the Supplier Defendant induced the Plaintiff to purchase the expensive Specialty Products of the Supplier Defendant, the Defendants independently and in concert orchestrated schemes or artifice to deprive the Plaintiff of intangible and tangible right of honest services and goods several times over.  This conduct shows all elements of RICO which with the above defendants have shown,  an evolving and recurring pattern, historically and thru today (for this case) over a five year period of time from 2004 thru 2008 for these defendants.

13. Whereas Defendants have committed and continue to commit numerous (alleged) racketeering violations of § 1962(c), based on predicate acts of mail and wire fraud.  At the least Four counts of 18 U. S. C. §§ 1341, 1343, 1961(1) (B). A fifth count alleged a conspiracy to violate §1962(c). Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, Electronic Fund Transfer Act, 15 U.S.C. 1693 *et seq,* Title 16: Commercial Practices PART 310—TELEMARKETING SALES RULE § 310.3   Deceptive telemarketing acts or practices. The Plaintiff is claiming damage and injury of at least $550,000.00, the amount of the contract for the goods sold to Plaintiff, damaging and injuring the Plaintiff's business. Along with other Federal Statues given throughout this amended complaint.

14. This type of racketeering, white collar fraud crimes shows the industry problem inherent with the Manufactures, Sellers and Leasing, entities across the nation. (Norvergence, Enron, CTI, MCI, Cisco, GE)  This type of Fraud is not exclusive to the financers of the equipment being

sold, but also by the facility operators that house the telecommunications equipment, Defendant Colo and the end users (the Supplier Defendant's Client) and are often part of the enterprise by "association in fact", as is in this case. This type of scheme takes place all over the world, with different Telecom and Telecom related companies (Call Centers, prepaid operators and even phone companies- ISP's, etc.) that need to purchase homologated equipment as it's the CORE equipment required to "run the daily business operations". Unless this specialized equipment is used solely for the purpose of Call Center or Platform business it is ***USELESS*** which makes this more specific crime than of ordinary everyday equipment that can be appropriated and resold and used by anyone. Therefore, the Defendants have directly injured, damaging and deprived the Plaintiff, no less10 times the amount of the original investment.

15. The Plaintiff is a Certified Cisco and Quintum Reseller Globally dealing primarily with all types of Telecommunications systems and Antennas, Mobile and Fixed line for the since 1995. (www.MonitorDaily.com  carry's historical articles relating to industry frauds)

## RELEVANT PERIOD OF TIME

16. The Defendants being deceitful from the start show the "intentional" aspects of how they defraud and continue to conspire using the "investment" of the "paid for goods" by the Plaintiff. Therefore showing the true scheme of the supplier Defendants (the enterprise) and the Supplier Defendants client (the enterprise) and the defendant COLO (the associate in fact) in the furtherance of the enterprise to (U.S.C§1349 attempt/conspire) conspire with co-schemers, while committing (allege) RICO, 18 U.S.C. § 1961 *et seq.* U.S.C § 1343 wire fraud, U.S.C § 1341 mail fraud, 49 U.S.C. § 11707 (Supp.1981), Interstate Commerce, Computer Fraud and Abuse Act Section 1030, Telemarketing Fraud. Truth in Lending Act, 15 U.S.C. 1601 *et seq.,* Electronic Fund Transfer Act, 15 U.S.C. 1693 *et seq,* Title 16: Commercial Practices PART 310— TELEMARKETING SALES RULE § 310.3

17. These actions of Mail and Wire fraud happen between the Months of May 2004 – Aug 2005 and will be readily given at time of discovery. To further add action to words the Supplier Defendant had their U.S Mail Delivery Service, twice in May and June of 2004 pick up the American Express Checks (consumer) along with a Purchase Order amounting to Over $150,000.00 from the Plaintiffs SOHO personal residence in California and delivered Interstate to Harris County Texas.

18. The Fourth and Fifth Known counts of mail Fraud and Interstate Commerce took place in July and August of 2004, shipping the equipment to the Philippines, and to Los Angeles

California, from Harris County Texas, a violation of Interstate Commerce in relation to

Misappropriation of Corporate assets and Intentional Fraud et. al., additional violations of state

and federal codes are: Fraudulent Conveyance, Fraudulent Transfer of Stolen Goods, pursuant to

the UCC-2 and the Federal Trade ACT.

19. The continuing practice of the enterprise is apparent, as long as it is in the telecom

collocation (COLO), it is an on going monthly enterprise.

20.  Additionally somewhere between the years of 2006-07 another associate in fact has been

added to the equation to be confirmed during discovery.

21.  The Supplier defendants (Stratasoft) have been the masterminds, of these violations causing

unjust enrichment, conversion, and breach of contract, fiduciary duty, and a constructive trust. I

believe with a Forensic Accounting at Discovery, the Plaintiff will find this fraud and more.

## DISTINCTION BETWEEN THE ENTERPRISE AND
## THE PATTERN OF RACKETEERING ACTIVITY

22. As described herein, the Supplier Defendant Stratasoft and or with Touch Asia as the

Enterprise was separate and apart from the pattern of racketeering activity within the meaning of

18 U.S.C. § 1961(1) because the enterprise engaged in both legitimate and illegitimate activity.

Further, the structure of the Enterprise was beyond that required for the commission of the

pattern of racketeering activity.

23. All of these acts are to the furtherance of the schemes the "Enterprise's" were done within

the all the Defendants as a single company or represented by individual within companies.

## SCHEME TO ARTIFCE AND DEFRAUD THE CONSUMER USING FRAUDLENTLY
## OBTAINED EQUIPMENT

24. Each and every defendant knowingly engaged or attempted to engage in monetary

transactions in this property a value of greater then $10,000.00 criminally and or fraudulent

derived for unlawful activity specified in 18 U.S.C 1961.

25. Plaintiff believes and is informed that defendants engaged in such conduct before doing

business with the Plaintiff and with the Plaintiff's equipment is continuing to engage in the

1  Enterprise since 2004 in 2006 or 07and has either sold out one piece of the pie (using the

2  Plaintiff's equipment) or has conspired to engaged another by associate. All in violation and

3  constituting a "A Pattern of Racketeering Activity" of 18 U.S.C. 1961(1) and (5).

4

5  26. The Defendants first act of unlawful activity. Conducting or attempted to conduct financial

6  transactions or a form of accepting fees, deposits, or services related to from using or involving

7  the unlawful obtained equipment. 18 U.S.C 1961.  This enterprise has a common goal of all

8  defendants, desiring the income from maintenance, the free equipment licensee use, which

9  generates revenues, the leased cage colo services, generating revenues and of course using the

10  additional resale of the stolen goods " that was already sold to the Plaintiff" a clear unlawful

11  violation of §1962 and on going pattern.

12  27. The defendants knowingly conspired knowingly that the transaction was designed and in

13  whole or in part to conceal or disguise the nature, location, source, ownership, or control of the

14  enterprise all unlawful activity. 18 U.S.C 1961(2)

15  **RICO – 18 U.S.C. §§ 1961-68**

16

17  "Although it took some time before federal prosecutors began to use RICO expansively, it is now widely used against many types of

18  crime, including white collar crime." O. Obermaier and R. Morvillo, *White Collar Crime: Business and Regulatory Offenses*, §

19  11.03, at 11-6 (Rel. 2, 1991). RICO's prohibited activities are provided at 18 U.S.C. § 1962. Violations of either Section 1341 or

20  1343 or both may be used by prosecutors as the predicate acts necessary to establish a RICO violation. *See* 18 U.S.C. § 1961(1)(B)

21  ("racketeering activity" defined to include "any act which is indictable under . . . . section 1341 (relating to mail fraud), section 1343

22  (relating to wire fraud) . . . .").

23  If the other requisite elements of a RICO violation can be established, a defendant who has committed the predicate acts of mail or

24  wire fraud may be subjected to more severe sanctions than those imposed for a mail or wire fraud conviction. For example, the

25  United States Sentencing Guidelines provide that the minimum base offense level for unlawful conduct relating to a RICO

26  conviction is 19. U.S.S.G. § 2E1.1. In addition, the government may seek civil (18 U.S.C. § 1964) or criminal (18 U.S.C. §

27  1963(a)(1)-(3)) forfeiture of assets. "Courts have generally held that RICO criminal forfeiture is mandatory upon the defendant's

28  conviction." O. Obermaier and R. Morvillo, § 11.05, at 11-22 (citing cases from the Third, Fourth, Fifth, Ninth, and Eleventh

29  Circuits). The property subject to forfeiture includes "real property" and "tangible and intangible personal property." *See* § 1963(b).

30  For Department policy relating to RICO prosecutions see USAM 9-110.000, *et seq.*

**ON GOING BUSINESS PRACTICES OF FRAUD AND DECIT-PATTERN
RICO AGAINST ALL DEFENDANTS AND IN-CONCERT**

32  28. The Plaintiff will show that the Defendant's willful disregard, negligence and malicious

33  actions of these Defendants, as they present to the public and the Plaintiff, legal established

companies. All the while, these white collar companies are using the "ruse" to "bait the hook" others, like the Plaintiff. Based on the Plaintiff's most basic investigation this complaint will shown the same type of Schemes by complaints filed against all of these Defendants.  This gives the complaint for RICO using, prior predicated acts (which need not be not convictions), proven by publicly statements in actions of like and similar to the business they are in. ( **Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985))**

29. The only prevention is to teach them to be honest, so that others will not fall into this trap that allows these defendants to swindle them out of their monies and customers today and future customers and income.

30. Whether these actions happened at the time of purchases or in any ensuing time frames after, negligence is not an answer to any of these damages.  Fraud or the intent to defraud, misappropriations of corporate assets, duping,  the financers of the equipment (banks, Plaintiff) even to become the *competitors* to the Plaintiff for unjust enrichments on the "paid for goods", to take advantage and damage other parties.

31. All of the Defendants have long track records revealing these unlawful acts that show at least two or three violations of each of the current acts, or intention of these racketeering acts to meet with the on going civil racketeering elements.

32. The knowledge and allegations are based off of the internet search of public cases filed against each and every Defendant over the span of more than 5 years. Not all the cases settled or went to trial, some were dropped due to overwhelming legal expenses.  All of them inferred mail fraud; wire fraud, Fraudulent Inducement, intentionally misrepresentation, unfair business practice, deceit, conspiracy and other fraud and unlawful actives.  Similar actions, whereas, the defendants took the Plaintiff's money or equipment and gave nothing in return.  When questioned by the Plaintiff's, the defendant's claims stated they received the checks, but there is reconcile of doing any business. Refusal to return the funds damaging and Injuring the Plaintiffs.

Footnotes 1. Cibola Vista Resort and Spa, LLC, No. CV-06-406-PHX-SRB an Fraud in the inducement, Negligent misrepresentation, Negligence ,Punitive Damages and other Remedies- settled 2. Premier Marketing sued under the state of Arkansas deceptive trade practices fraud and deceit against Jason pace Alleged trespass remote access to their equipment, went out of business due to no equipment.  Alleged sold them used equipment from another licensee. 3.United States V US Colo holding equipment hostage for payment of others. More to be mentioned at discovery.

**USING THE EQUIPMENT TO DERIVE MONEYS FROM ILLEAGAL OBTAINED EQUIPMENT, PATTERN OF BUSINESS.  PART OF THE SCHEME**

33. The Supplier Defendant, and Landlord Defendant and the Suppliers Defendant's Client, having devised a scheme or artifice to defraud it's customers/ victims or to obtain money or property by means of false or fraudulent pretenses, representation or promises caused to be transmitted by mean of wire radio or interest commerce, writing signs, signals, pulses, pictures and sounds, ( as in a call to another caller generating a revenue stream) all in violation of 18 U.S.C 1343,  thus creating the a new  project we will call the "Enterprises".  RICO statues Elements requires company or entity in which to hide or position the assets ( or gains), the Plaintiff's stolen "Sale of Goods" and used for investment in the scheme, that create or grow revenues are in violation.

34. The Plaintiff has been damaged and deprived of revenues while the defendants have created it using the Plaintiff's equipment.

#### CLAIM FOR RELEIF

34. The Plaintiff alleges and incorporates by reference all preceding allegations of the within complaint as if each such allegation was set forth at it's place in *haec verba*.

35. The Defendants aforementioned fraudulently used goods for uses without payment to rightful Owner.

36. The defendant's intents were false when the defendant made them.  Specifically and without Limitation the defendants has no intention of paying for the equipment and derive only income to be used in the commission of this fraud to continue with the pattern of fraudulent financial transaction unknown to the customers buying services on this network or  "Sale of Goods".

37. The Plaintiff relied on the Defendants promises, commitments, representation, warranties and expressions on intent were fraudulent, and were made for the sole purpose of obtaining Plaintiff's funds under false pretenses and using them in commission of other unlawful activities.

38. Plaintiff are entitled to recover from the defendants, jointly and severally threefold the damages proximately caused by  the defendants conduct in violation of 18 USC 1962 plus the cost of this suit including any and all reasonable legal fees and or attorney fees. .

**COMPUTER FRAUD, AND ACCESS DEVICES FRAUDULENT USED FOR ILL GOTTEN GAINS- STRATASOFT AND TOUCH ASIA- US.COLO ONE WILSHIRE**

39. The Enterprise and all of it's defendants each, conducted, financed, managed, supervised, directed and or fraudulently claimed ownership, and used that ownership to take part in accessing and using stolen and or fraudulent possession of Telephony/ Computer equipment to engage in an enterprise in unlawful access of computer equipment, using the dialogic board or access devices, with and for the unlawful process of minutes on a network.

**CLAIM FOR RELEIF**

40. The Plaintiff alleges and incorporates by reference all preceding allegations of the within complaint as if each such allegation was set forth at it's place in *haec verba*.

41. The Defendants aforementioned fraudulently accessed knowingly fraudulent goods for uses without payment to rightful Owner.

42. The Defendants intents were false when the defendants made them. Specifically and without Limitation the defendants has no intention of paying for the equipment and derive only income to be used in the commission of this fraud to continue with the pattern of fraudulent financial transaction unknown to the customers buying services on this network or "Sale of Goods".

43. The Plaintiff relied on the Defendants promises, commitments, representation, warranties and expressions on intent were fraudulent, and were made for the sole purpose of obtaining Plaintiff's funds under false pretenses and using them in commission of other unlawful activities.

**BREACH OF FIDUCIARY DUTY, FRAUDULENT INDUCEMENT, MISREPRESENTATION, APPROPRIATION OF CORP ASSETS- STRATASOFT**

44. The supplier defendants conspired a Scheme to fraudulently abuse their fiduciary responsibility, (Steal and commit Robbery ) whereby Appropriating and converting the initial funds of $138,000.00 a supposed "Sale of Goods" to the Plaintiff and Internally investing it as the Assets, in a name unproven, (but to be determined at Discovery), then used by the Supplier Defendant in a scheme whereby using this Appropriation of Corporate Assets in the furtherance of the Scheme of bilking over $500,000.00 of equipment and services.

45. This scheme has continued for over the span of 4 years, (known to Plaintiff as the least amount owed by Defendants) the actual monetary damages and injury to be over $500,000.00 but to be determined by the jury and or courts.

46. It was the intention of the Defendant not to perform on the Purchase by the Plaintiff.

(Courts have held nonfiduciaries criminally liable for frauds related to intangible rights when a co-schemer or co-conspirator was a fiduciary. *See United States v. Alexander*, 741 F.2d 962, 964 (7th Cir. 1984) (an intangible rights scheme is cognizable when at least one of the schemers has a fiduciary relationship with the defrauded person or entity)

## CLAIM FOR RELEIF

47. The Plaintiff alleges and incorporates by reference all preceding allegations of the within complaint as if each such allegation was set forth at it's place in *haec verba.*

48. The Defendants aforementioned has a duty to the Plaintiff to act at all time with the Plaintiffs interests, to be truthful and not engage in self-dealing at the Plaintiff's expense.

49. The defendants act of omissions and  breach of their respective Fiduciary Duties to the company in which entrusts monies in to the defendants account, were fraudulent and not in compliance with the Publicity Traded companies, Sarbanes Oxley Acts.

50.  The Plaintiff relied on the Defendants companies presence in the market place as a well known well reputed sales and equipment organization as it states on it website. Instead the promises, commitments, representation, warranties and expressions on intent were fraudulent, and were made for the sole purpose of obtaining Plaintiff's funds under false pretenses.

51. Plaintiff has been damaged and injured in sums to be proven at trial.

52. Defendants' conduct was, therefore, Malicious, fraudulent and oppressive, thereby entitling the Plaintiff to an award of punitive dames in a sum to punish the defendants for their despicable conduct, and deter future repetitions of the same.

## INTIMIDAITON BY PITTBULL APPROACH FOR OTHER PLAINTIFF'S AND FRAUD AFTER THE SALE- PATTERN OF BUSINESS.

53. This collusion and conspiracy that the Supplier Defendant representatives, have shown and will be acknowledged during discovery and based on their fraudulent uses of property and services.

54. Some of Defendants have continued in this path for well over the last ten years. At least four companies within and outside the United States have filed complaints, lodged complaints in courts and PTT's (private telecom companies), PUC, and councils around the world and county.

55. Others have been intimidated by the "company's" Attorney. Some of the Plaintiff's are unable to complete the costly proceeding and instead have given up the claims. Not from being wrong in the matters against the Defendants, but from having the wrongdoers, (Defendants) forced them out of business after they had purchased or transacted with the supplier Defendant. Just like this Plaintiff.

56. These "Plaintiff's" would not have purchased the equipment, services and licenses that are their Core equipment, and those previous plaintiffs, have been deprived of use and services in their business showing an on going pattern of false promises, deceit, no warranties, commitment to services and reliance.

57. Some of the Defendants have inflicted well over a million dollars in damages as stated in public documents that the Plaintiff and Defendants will compel in discovery.

## FRAUD AND INTENTIONAL FALSE INDUCEMENT AND MISREPRESENTATION-CONSPIRACY AND RICO
### StrataSoft and US COLO One Wilshire

58. Most often and in this case, the Suppliers and LandLords are wrongdoers (Defendants). They already know this game, they have done it several times over the years as shown by the cases, filed against them in other courts both pro and against, ensuring other future potential plaintiff's and current customers.

59. Therefore with these types Defendants, they must rely first on themselves to execute the sale, establish the shell or possibly legal business, with the intention to defraud, as you have seen here. Four elements- the end user to look like a enterprise, the supplier knowing how to defraud the funder to take the money and use it for their own gain- for instance using the closed door Colo to keep all other parties away and become the "competitors" to the funders using the income as investment and end users as tools to resell it to.

60. These defendants attempted to and did conspire, a fraud while benefiting from the income. These defendants Prey on the smaller companies and or persons like the Plaintiff, who honesty wants to work with companies that wish to purchase equipment or lease it from the Plaintiff along with the associated Services to grow their businesses.

61. Two of the Defendants I have worked with in the last five years and in both cases, both Defendants have held for ransom, equipment and or failed to pay for services creating fraudulent contracts, mail fraud, wire fraud as well as deceitful and fraudulent intent to do harm and or injury to other companies and the Plaintiff within the last four years and it is still have the same business model.

62. The Defendants willfully and unlawfully taking the stand, in opposition to the law (U.S.C Title 15 7001) and have, knowingly with the" intent" to "fraudulently kept equipment that does not belong to them" for payment owed by others.

63. This is a costly and time consuming game that is directly for the Defendants personal gain.

64. Without legal intervention and sometimes with, it is difficult and truly a racketeering activity of use and personal gain. The Plaintiff has suffered injury and damages from the false inducement, RICO, Misrepresentation and Omissions by the defendants.

**CLAIM FOR RELEIF**

65. The Plaintiff alleges and incorporates by reference all preceding allegations of the within complaint as if each such allegation was set forth at it's place in *haec verba*.

66. The Defendants promises, commitments, representation, warranties and expressions on intent were false when the defendant made them. Specifically and without Limitation the defendants has no intention of issuing true legal warranties, licenses and ownership or honoring the monies as paid for "Sale of Goods" and in the amount of no less than $555,000.00, plus all legal fees.

67. The Plaintiff relied on the Defendants promises, commitments, representation, warranties and expressions on intent were fraudulent, and were made for the sole purpose of obtaining Plaintiff's funds to use the equipment under false pretenses to furtherance a scheme.

68. Plaintiff has been damaged and injured in sums to be proven at trial.

69. Plaintiff are entitled to recover from the defendants, jointly and severally threefold the damages proximately caused by the defendants conduct in violation of 18 USC 1962 plus the cost of this suit including any and all reasonable legal fees and or attorney fees. .

**OMMISSION OF MATERIAL FACTS, FALSE STATEMENT BY REPRESENTATIVE FOR INTENTIAL INDUCMENT-WIRE FRAUD, MAIL FRAUD, INTERSTATE COMMERCE AND UCC-2 VOILATIONS- STRATASOFT**

70. The Plaintiff was solicited by the Supplier Defendant – In May of 2004 Michael Bridges, Sales Managers (he indicated over the phone) called (wire transfer) from Texas.

71. Mike Bridges introduced himself as a representative working for the defendant –Stratasoft, a Manufacture of Telephony Dialers.

72. Mike Bridges indicated they were a "technically" "cold calling", searching for a finance company, after several calls to other companies, through the Internet phone book and by their in-house financer, they were told about the Plaintiff.

73.  Mike asked if the Plaintiff would be interested in Financing one of their clients.

74. Mike Bridges explained how a client of, Touch Asia was unable to get funding directly with the defendant's in-house credit and was over all was a very difficult credit to get placed anywhere.

75. The Plaintiff, upon hearing who the client was, indicated to the defendant, not interested.

76.  Plaintiff told Mike that Touch Asia had a terrible track record and wasn't interested.   Mike asked the Plaintiff to consider it.

77. Mike called again two days later and asked what it would take to get this client of theirs funded.

78. Mike Bridges said from the very beginning they would do what it took to get the deal done.

79. Plaintiff informed Mike Bridges it isn't a lease company, that on occasion the Plaintiff, would under very specific direction, only purchase equipment, and the Plaintiff would lease/rent it to the clients for short term durations. No longer than 18 months. That for the Last few years with all the defaults, the Plaintiff only goes through banks like the defendant did, when it's customers required funding during a purchasing.

80.  Plaintiff explained it was only allowed to fund to a bank as a distributor of any equipment manufacturer.

81. The Plaintiff informed Mike Bridge the experiences with the Defendant Touch Asia.  That Touch Asia was delinquent on other accounts, services that had be set up by the Plaintiffs for Touch Asia over the two preceding years.  The Plaintiff wasn't interested.

82. Mike called several times to convince and persuade by adding more inducement to the sale.

83. Mike went on and on to the Plaintiff about the investment of the equipment and what it would make for the Plaintiff for the short time lease.  When Mike Bridges got as far as he could.

84.  His boss, Jason Pace,  called and together tried to influence the Plaintiff to do the deal, that

1  they would protect the Plaintiff with a recourse of the equipment if the customer defaulted as

2  they had with their in-house leasing.

3  85. That they would take it back as recourse, anything to induce the Plaintiff even farther,

4  indicating the equipment had a shut off dongle, or toggle, which would be manned remotely by

5  the Plaintiff.

6  86. That the Plaintiff would be given all documents and Warranties and License on the Stratasoft

7  equipment and would resell it to a current customer in the PIPE LINE as Mike Bridges Indicated

8  on email to the Plaintiff. Still weary, from this telemarketing act that was happening.

9  87. Jason Pace got the Head of finance Lance McCarthy to call and still yet induce, and influence

10  the Plaintiff to fund the already "D" rated client.

11  88. Mike, Jason and Lance went on to say that nothing was needed from the Plaintiff except the

12  P.O and money.

13  89. The Plaintiff asked for the sales contract usually used in these kind of software transactions

14  for the license and was sent an invoice listing by email, several times to get the equipment

15  correct.

16  90. Lance McCarthy emailed several lists with equipment descriptions and services and licenses

17  that were to be put on the Purchase Order from the Defendant Exhibit_____.

18  91. Being a Distributor and authorized reseller for some of the largest suppliers in the World,

19  Cisco, Linksys, NEC, the Plaintiff, wouldn't require a contract the terms are listed on the

20  Companies per the Uniform Commercial Code, with all warranties and guarantees,

21  The gist of the offenses is not the scheme to defraud, but the use of the mails or interstate wire communication. *See United States*

22  *v. Garland*, 337 F. Supp. 1, 3 (N.D. Ill. 1971); *see also United States v. Gardner*, 65 F.3d 82, 85 (8th Cir. 1995) ("The use of the

23  post office establishment in the execution of the alleged scheme to obtain money by false pretenses is the gist of the offense

24  which the statute denounces, and not the scheme to defraud.") (*quoting Cochran v. United States*, 41 F.2d 193, 197 (8th Cir.

25  1930)), *cert. denied*, 116 S.Ct. 748 and 116 S.Ct. 1044 (1996); *United States v. Lebovitz*, 669 F.2d 894, 898 (3d Cir.) ("The gist

26  of the offense of mail fraud is the use of mails by someone to carry out some essential element of the fraudulent scheme or

27  artifice."), *cert. denied*, 456 U.S. 929 (1982). Accordingly, each use of the mails (in the case of mail fraud) and each separate

28  wire communication (in the case of wire fraud) constitutes a separate offense, i.e., each mailing and/or wire transmission can

29  constitute a separate count in the indictment. *See, e.g., United States v. Pazos*, 24 F.3d 660, 665 (5th Cir. 1994) (mail fraud);

30  *United States v. Rogers*, 960 F.2d 1501, 1514 (10th Cir.) (each use of mails is separate offense), *cert. denied*, 506 U.S. 1035

31  (1992); *United States v. Castillo*, 829 F.2d 1194, 1199 (1st Cir. 1987) (wire fraud).

32

33

**CALIM FOR RELEIF**

92. The Plaintiff alleges and incorporates by reference all preceding allegations of the within complaint as if each such allegation was set forth at it's place in *haec verba*.

93. The Defendants promises, commitments, representation, warranties and expressions on intent were false when the defendant made them. Specifically and without Limitation the defendants has no intention of issuing true legal warranties, licenses and ownership or honoring the monies as paid for "Sale of Goods" to an amount no less than $555,000.00 plus legal fees.

94. The Defendants unsolicited Telemarketing calls are a direct violation of the Telemarketing Acts related to the fraud and violation for unsolicitation for funds in relation to fraudulent sale of goods, promises, commitments, representation, warranties and expressions on intent were false when the defendant made them. Specifically and without Limitation the defendants has no intention of issuing true legal warranties, licenses and ownership or honoring the monies as paid for "Sale of Goods" as covered in the Uniform Commercial Code and the Unfair Trade Practices,

95. The Plaintiff relied on the Defendants promises, commitments, representation, warranties and expressions on intent were fraudulent, and were made for the sole purpose of obtaining Plaintiff's funds to use the equipment under false pretenses to furtherance a scheme including and not limited to mail fraud, interstate fraud, wire fraud and inducement .

96. Plaintiff has been damaged and injured in sums to be proven at trial.

97. Defendants' conduct was, therefore, Malicious, fraudulent and oppressive, thereby entitling the Plaintiff to an award of punitive dames in a sum to punish the defendants for their despicable conduct, and deter future repetitions of the same.

98. Plaintiff are entitled to recover from the defendants, jointly and severally threefold the damages proximately caused by the defendants conduct in violation of 18 USC 1962 plus the cost of this suit including any and all reasonable legal fees and or attorney fees. .


**FRAUD AND OMMISSIONS IN MATERIAL FACTS FOR EXPRESS WARRENTIES**
**AND GAURENTEES OF SALE OF GOODS The FRCP 9(b)AND TORTUOUIS**
**INTERFERARENCE OF CONTRACTUAL REALTIONS**

99. The Plaintiff was told no other sales agreements were necessary.

100. The defendant's omission of the sales contract shows fraud and deceit, Malicious, Intentional Misrepresentation, Omission of the Material Facts, is proven by both Jason Pace and Michel Bridges emailing the only the service portions of the combined sales and service contract, "the maintenance contract".

101. The Plaintiff reviewed the Maintenance contract which DID inform the user of the cutoff switches and remote access devices that are in the equipment that would be controlled as a rental.

102. Again prior to sending the PO, the Plaintiff asked by email for a Sales Agreement or Contract and was by Pace, Bridges and McCarthy there was NOT one. Plaintiff's investigation proves otherwise and will be presented for trial.

103. By Not presenting the Sales Contract and Giving it to the Supplier Defendant's Client (Defendant) has caused injury and harm, Damage in several ways. Fraudulently and Maliciously, Interfered with Contractual Performance with the Supplier Defendants Client.

104. In discovery the Plaintiff intends to prove that these documents are "standards" and is part of the Defendant daily operations, these standards were Not to the Plaintiff and created this Intentional Fraud.

105. The defendant continued this shame and scheme when the Plaintiff asked, regarding paperwork for the warranty on the equipment and licenses, to be able to resell it. The Supplier Defendant replied they don't have any such documents just the maintenance contract.

106. That any other documents and receipts would in the mail after the install.

United States v. Keplinger, 776 F.2d 678, 697 (7th Cir. 1985), holds "that omissions or concealment of material information can constitute fraud . . . cognizable under the mail fraud statute, without proof of a duty to disclose the information pursuant to a specific statute or regulation." Related facts involving even a $1 sale

## CLAIM FOR RELIEF
## INTENTIONAL INTERFEARANCE WITH CONTRACTUAL REALTIONS, EXPRESS WARRENTEE FRAUD, UNIFORM COMMERICALCODE VIOLATIONS FOR SALES

107. The Plaintiff alleges and incorporates by reference all preceding allegations of the within complaint as if each such allegation was set forth at it's place in *haec verba*

108. The Plaintiff alleges, that the Suppliers Defendant's Client Touch Asia was given both a Sales Contract and Maintenance contract contrary to what was told to the Plaintiff. Harming and

injuring the Plaintiff from the monies owed from the client and future potential client to resell it to.

109. The Plaintiff alleges and believes both Stratasoft and INX fraudulently misrepresented to the Plaintiff the legal obligations from the defendants at the time of advancing the money for the scheme.

110. The Plaintiff alleges and believes that Stratasoft and INX fraudulently with Malicious Intent to conceal the accountability of the purchase and ownership. Proven by the public circulation of 2004 8 K financial statements. Not in the name of the Plaintiff but in the clients Name.

111. The Plaintiff alleges and believes that Stratasoft and INX fraudulently with Malicious Intent to conceal the accountability of the purchase and ownership. Proven by the Nasty, Intimidating letter from the attorney's of INX stating the money did come from the Plaintiff but the defendants placed in it another account and name and are Now taking over the management of the Plaintiff's issues. Exhibit ____

112. The Plaintiff alleges and believes that INX had malicious intentions and designs on damaging and destroying the Plaintiff's small business (as they had in the past), by not returning the Monies the defendants Parent INX stated they had accepted into the company trust account.

113. The Plaintiff alleges and believes that INX had malicious intentions and designs on damaging and destroying the Plaintiff's small business, by not returning the Monies the defendants Parent INX stated they had accepted into the company trust account.

114. Nor accepting any accounting of it to the Plaintiff and or responsibility or liability, with regard to the return of the funds or ownership, warranties, guarantees and or licenses paid for of the equipment.

115. Plaintiff has been damaged and injured in sums to be proven at trial.

116 . Defendants' conduct was, therefore, Malicious, fraudulent and oppressive, thereby entitling the Plaintiff to an award of punitive dames in a sum to punish the defendants for their despicable conduct, and deter future repetitions of the same.

117. Plaintiff are entitled to recover from the defendants, jointly and severally threefold the damages proximately caused by the defendants conduct in violation of the Law, plus the cost of this suit including any and all reasonable legal fees and or attorney fees

**BREACH OF CONTRACT, BREACH OF CONSTRUCTIVE TRUST, NEGLIGENCE, CONCEALMENT, INTIMIDATION AND PEIRCEING THE CORP VAIL OF PARENT COMPANY -ALL DEFENDANTS**

118. After several emails with Jason Pace, he passed off calls to upper management, the legal or the COO, Gary Johnson from Stratasoft.

119. The Plaintiff was told by the Supplier Defendants representative at first there was no company in the system.

120. With in three other calls from the Plaintiff the defendant refused to acknowledge the calls or accept calls and or have any conversations with the Plaintiff.

121. The Plaintiff searched the internet the Parent company INX Inc.

122. The Plaintiff emailed and had a telephonic conversation with the president Jim Long, explaining the situation and would he help the Plaintiff to understand and reason why access wasn't being granted to the owner and licensee, the Plaintiff. Exhibit_____

123. Jim Long the President of INX the parent of Stratasoft responded that he was checking into it.

124. What the Plaintiff received from an Attorney Michael Narsete of the INX company, a malicious letter, intended to intimidate and cower the average everyday small business women. Whereby taking advantage of an acknowledged California Small Business "Women Owned Enterprises" (referenced within the California Small Business, Women Owned Business rights) faced with bulling tactics, reeking of racketeering (as proclaimed), of the big boys.

126. WITHIN Eight months, Four months after the purchase of equipment. The signs of the fraud are showing up. Four months beyond the initial calls to the Supplier Defendant representative Jason Pace regarding the non payment from the Supplier Defendants client.

127. Eight Months after Jason Pace had induced the Plaintiff to do business and purchase the equipment from the Supplier Defendant Stratasoft with false promises of having remote access as soon as the equipment was installed and running.

128. The Promise is "remote access" it is the only way control and or turn off the Stratasoft Dialer Platform used and known to the Plaintiff, as the only way to control and or turn OFF a software system preserving the rights of the owner of the licenses.

129. The Defendant at the time of purchase knew this was the Key Element to inducement and Lulled the Plaintiff in to the Purchase.

130. This was the only inducement that the Plaintiff demanded and the defendant agreed to. It is clear to see that the Parent Corporation is the figure head for these Practices and doesn't do anything to rectify them. Except intimidate the purchaser.

131. As part of the Scheme to defraud the Plaintiff, the Defendants informed the Suppliers Defendants client, Touch Asia, that the Plaintiff *DID NOT OWN THE EQUIPMENT,* virtually giving way rights and licenses to the supplier defendant's Client.

132. Tortuously, Interfering with any contracts with any party or defendants which directly causing injury and damage whereby  voiding or making uncollectable any contracts and or equipment the Plaintiff had with the supplier Defendant, or the Client.

133. The Client would not have the need to pay back to the Plaintiff when the rights were given from the manufacture, the supplier defendant.

134. This scheme was concealed from the Plaintiff at purchase and again at four months and eight months.

135. In the background the scheme was already running from the inception of the funds being accepted by the defendants, fulfilling the scheme of the Enterprise.

It is a well-established principle of mail fraud law, however, that use of the mails after money is obtained may nevertheless be "for the purpose of executing" the fraud. This proposition was considered by the Supreme Court in *United States v. Sampson,* 371 U.S. 75 (1962), where salesmen fraudulently obtained applications and advance payments from businessmen and then mailed acceptances to the defrauded victims to lull them into believing the services would be performed. The Court held that such a "lulling" use of the mails was for the purpose of executing the fraudulent scheme. Thus, post-purchase mailings or wire transmissions that are designed to lull the victim into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect can be in furtherance of the scheme. *United States v. Rogers,* 9 F.3d 1025 (2d Cir. 1993), *cert. denied,* 115 S.Ct. 95 (1994

## CLAIMS FOR RELEIF

136. The Plaintiff alleges and incorporates by reference all preceding allegations of the within complaint as if each such allegation was set forth at it's place in *haec verba*

137.  The Plaintiff alleges the Defendant acts and omission making the defendants Libel and Responsible for any Contract Breach's regarding the Sale of the Equipment to the Plaintiff and breach also by the Supplier Defendant's client.

138. The Plaintiff alleges and believes the Defendants informed the Suppliers Defendants client, Touch Asia, that the Plaintiff *DID NOT OWN THE EQUIPMENT,* giving way rights and licenses to the supplier defendant's Client. Tortuously, interfering with all contracts in the past, today or future with any party or defendants, directly causing irreparable harm, injury and damage.

139. The Plaintiff alleges and believes the Defendants informed the Suppliers Defendants client, Touch Asia, that the Plaintiff *DID NOT OWN THE EQUIPMENT,* giving away rights and licenses to the supplier defendant's Client. Tortuously, Interfering with all contracts in the past ,

today or future with any party or defendants directly causing irreparable harm, injury and damage whereby voiding or making uncollectable any contracts and or equipment the Plaintiff had with the Supplier Defendant, or the Client by any lawful means.

140. The Plaintiff alleges and believes the defendants Misrepresentations and Omissions of material facts and intimation relating to the any and all Contracts, established between all defendants and or between defendants directly has caused harm, injury and damages. That would include all obligations contracts between Touch Asia, Stratasoft and US COLO ONE WILSHIRE.

141. Accordingly and in good conscience for all of the above, the Plaintiff is entitled to a Constructive and or resulting trust on: any funds, accounts, receivable and or other consideration obtained by or owed to defendants or sales, distribution, or marketing using or use of the Stratasoft platform, equipment, licenses, services. Relating to the any and all Contracts, established between all defendants and or between defendants or any other parties for income or usage, directly from the harm, injury and damages. That would include all obligations and software or any other licenses between Touch Asia, Stratasoft and US COLO ONE WILSHIRE up to the percentage the defendants were required to convey.

142. Plaintiff has been damaged and injured in sums to be proven at trial.

143. Defendants' conduct was, therefore, Malicious, fraudulent and oppressive, thereby entitling the Plaintiff to an award of punitive dames in a sum to punish the defendants for their despicable conduct, and deter future repetitions of the same.

144. Plaintiff are entitled to recover from the defendants, jointly and severally threefold the damages proximately caused by the defendants conduct in violation of the Law, plus the cost of this suit including any and all reasonable legal fees and or attorney fees

### INTENTIONAL INTERFERNCE WITH CONTRACTUAL RELATIONS

145. The Plaintiff was called several times and finally lulled by first the sales person of the supplier Defendant and passed on to the middle management finally and supposedly upper management of the supplier Defendant.

146. The Plaintiff was told the client of the supplier defendant, had been turned down for regular means of sourcing the funds.

147. That the supplier Defendant had called and tried several banks and or other lease companies on its list and its current in house third party leasing company to fund the project for their client.

148. In this scam to defraud the Plaintiff, the client (a Defendant) and the supplier Defendant, were co-conspirators adding the third party or associate in Fact, only when the delivery would take place.

149. The actions of the Supplier Defendant, was to encourage, influence and induce the Plaintiff using lies, promises and omissions that would get the sale done.

150. The Supplier Defendant verbally and confirmed on emails, (Exhibit___) stated there would be a shut off switch, a toggle or dongle, that would be remotely accessible by software for the Plaintiff at their discretion. (This is common with rentals and in the defendant's rental maintenance contract)

151. That they would resell the equipment to its current PIPE LINE, that they would take recourse should the customer default.

152. They freely gave these assurances and claimed they would protect the Plaintiff from all damages and injury if the Plaintiff paid for the Goods and took this Client of the Supplier Defendants as a Lessee.

153. It is common, with in the Telecom industry to purchase equipment within sales organizations, with just a PO.

154. However the deposit and advancement of money would be wired or sent, it would be accepted for both the PO with the money. Final invoices, receipts, licenses and serial numbers are sent to the Purchaser, often the equipment is drop shipped to another location still maintaining ownership to the purchaser.

155. The Supplier Defendants are apparently well honed and are the masterminds of this type of fraudulent transactions, conveyance and transfers related to telecom equipment.

156. Generally and only after the equipment has been delivered and accepted by the client of the supplier would the Plaintiff even be aware of the fraud of these co- conspirators.

157. According to the Uniform Commercial Code-2 the Check or money deposited in the account that will be proved that transferring the assets of the Plaintiff to the client was an action of the Supplier Defendants, I am quite confident the Client didn't say "hey put it in my name, not the Plaintiff's", therefore it is alleged that Supplier Defendant Stratasoft HAD full knowledge that the Plaintiff who paid to retain rights and Licenses of that portion of the equipment, Not the Client of the Defendant, even if the Client of the Defendant purchased other equipment in the future.

158. This type of Fraud by the Supplier's and Manufacturer's are rampant in the Industry, however, this Scheme seems more Thought out from the Beginning Internally, by the supplier defendant, showing more Intent to Defraud as well as a Corporate Veil to hide behind with the Vile and continued Threatening letters and phone calls from the Attorney (in-house counsel) for the Defendant.

159. The Plaintiff alleges that the defendant's willfully and maliciously, plotted this entire scheme, to find a "pasty", without a large corporation (AT&T credit, GE,) behind them to fight the Supplier Defendants. To have the Plaintiff pay for the for the equipment, with full knowledge that the Plaintiff would not see or able to get into the locked out, none public facility (without a landlord waiver) part of the scheme, putting the wheel into action at the purchase.

160. The Supplier Defendant, knowingly used the previous client history with defaults to plot this scheme and did encouraged the Supplier Defendant's Client, following the pattern set by the Supplier defendant. Thus continuing the successful, imitating pattern of injury and harm to small businesses that we have seem from previous complaints.

## CALIM FOR RELEIF

161 . The Plaintiff alleges and incorporates by reference all preceding allegations of the within complaint as if each such allegation was set forth at it's place in *haec verba*.

162. The Defendants promises, commitments, representation, warranties and expressions on intent were false when the defendant made them. Specifically and without Limitation the defendants has no intention of issuing true legal warranties, licenses and ownership or honoring the monies as paid for "Sale of Goods".

163. The Defendants unsolicited Telemarketing calls are a direct violation of the Telemarketing acts related to the fraud and violation for unsolicitation for funds in relation to fraudulent sale of goods, promises, commitments, representation, warranties and expressions on intent were false when the defendant made them. Specifically and without Limitation the defendants has no intention of issuing true legal warranties, licenses and ownership or honoring the monies as paid for "Sale of Goods" as covered in the Uniform Commercial Code and the Unfair Trade Practices,

164. The Plaintiff relied on the Defendants promises, commitments, representation, warranties and expressions on intent were fraudulent, and were made for the sole purpose of obtaining Plaintiff's funds to use the equipment under false pretenses to furtherance a scheme including and not limited to mail fraud, interstate fraud, wire fraud and inducement .

165.  Plaintiff has been damaged and injured in sums to be proven at trial.

166. Defendants' conduct was, therefore, Malicious, fraudulent and oppressive, thereby entitling the Plaintiff to an award of punitive dames in a sum to punish the defendants for their despicable conduct, and deter future repetitions of the same.

167. Plaintiff are entitled to recover from the defendants, jointly and severally threefold the damages proximately caused by  the defendants conduct in violation of 18 USC 1962 plus the Costs of legal fees.

## SCHEME MACHANIC'S AFTER JANUARY 2005
## CONSTRUCTIVE FRAUD - ALL DEFENDANTS

168. Defendant would retain the rights, licenses and revenue streams derived from when the client, defaults, it would appear all that would be needed was cooperation from the LandLord defendant or possibly only for this instance, would turn a blind eye.  That in a short time they would again, gain full control and rights of the equipment to either use, resell or run themselves. In this case, within four months the client of the Suppliers Defendant asked the Plaintiff to pay a little late, two months after that, stopped any payments to the Plaintiff.

169. The Plaintiff alleges and believes theses actions are tortuous interference was with contractual relations created by the racketeering Supplier Defendant who had contracted with the client, after getting the money from the Plaintiff.  Who probably had issues and complaints from the Client based on equipment performance, yet telling the Plaintiff, there were no issues?

170.  The Plaintiff had discussion with the technicians, that indeed there were problems at the onset. Out of sight out of mind.

171. The supplier defendant misrepresented all the facts.  Omission of material facts "the actual Sales contract" that was given to the client rather than the purchaser or never given and held as an in-house account. (To be determined at discovery)

172.  The transfer of the assets paid for and purchased by the Plaintiff given freely to the client with all licenses and control and ownership to the client.

173. The Plaintiff's Purchase Order lawfully would provide the necessary ownership of the equipment from the Defendant supplier, instead the Defendant Stratasoft, representatives,  Jason Pace, Michael Bridges and  Lance McCarthy were confronted with this, they denied knowing anything.

174. They conspired to commit larceny, intentional fraud, misappropriations of corp. assets, financing Fraud, conspire to do all these acts, company committed conspiracy to defraud on several counts. Misrepresentation of the material facts. Intentional Fraud relating to a purchase of goods according to the Uniform Commercial Code of the United States, Interstate Commerce, wire fraud, mail fraud, *et. al.*

"All that is required is that [the defendant has] knowingly and willingly participated in the scheme; she need not have performed every key act herself." *United States v. Maxwell*, 920 F.2d 1028, 1036 (D.C. Cir. 1990). The "evidence need only show that defendant was a 'knowing and active participant' in scheme to defraud and that scheme involved interstate wire communications." *Id.* (quoting *United States v. Wiehoff*, 748 F.2d 1158, 1161 (7th Cir. 1984)).

## CALIM FOR RELEIF

175. The Plaintiff alleges and incorporates by reference all preceding allegations of the within complaint as if each such allegation was set forth at it's place in *haec verba*.

176. The Defendants promises, commitments, representation, warranties and expressions on intent were false when the defendant made them. Specifically and without Limitation the defendants has no intention of issuing true legal warranties, licenses and ownership or honoring the monies as paid for "Sale of Goods".

177. The Defendants unsolicited Telemarketing calls are a direct violation of the Telemarketing acts related to the fraud and violation for unsolicitation for funds in relation to fraudulent sale of goods, promises, commitments, representation, warranties and expressions on intent were false when the defendant made them. Specifically and without Limitation the defendants has no intention of issuing true legal warranties, licenses and ownership or honoring the monies as paid for "Sale of Goods" as covered in the Uniform Commercial Code and the Unfair Trade Practices, and Warranties.

178. The Plaintiff relied on the Defendants promises, commitments, representation, warranties and expressions on intent were fraudulent, and were made for the sole purpose of obtaining Plaintiff's funds to use the equipment under false pretenses to furtherance a scheme including and not limited to mail fraud, interstate fraud, wire fraud and inducement .

179. Plaintiff has been damaged and injured in sums to be proven at trial.

180.  Defendants' conduct was, therefore, Malicious, fraudulent and oppressive, thereby entitling the Plaintiff to an award of punitive dames in a sum to punish the defendants for their despicable conduct, and deter future repetitions of the same.

181.  Plaintiff are entitled to recover from the defendants, jointly and severally threefold the damages proximately caused by  the defendants conduct in violation of 18 USC 1962 plus the all legal fees.

## UNFAIR BUSINESS PRACTICES (FEDERAL) INTENTIONAL INDUCEMENT FOR SERVICES AND GOODS NOT RENDERED

## CAUSES OF ACTIONS FOR UNFAIR BUSINESS PRACTICES Unfair Cal. Bus & Prof, 17200 *et seq*

182. The Plaintiff alleges and incorporates by reference all preceding allegations of the within complaint as if each such allegation was set forth at it's place in *haec verba*.

183. The conduct of each and all of the Defendants alleged above, through their participation in the "Enterprise" constitutes unlawful, unfair, or fraudulent business acts, or practices and unfair deceptive, untrue or misleading was inducement not consummated or performed on all in violation of Cal. Bus & Prof. Codes 17200 et seq. ,

184. The conduct of each and all of the Defendants alleged above, through their participation in the "Enterprise" which the Defendants engaged in with intent directly or indirectly to perform services or to induce the public to enter into any obligation relating there to, constitutes making or dissemination ( or cause for making or disseminating) before the public in California or from California before the public in other states by an advertising device or other manner or means (including those services or concerning any circumstances or matter of fact connected with the proposed performance and which was known, or by the exercise of reasonable care should have been known, to be untrue or misleading, all in violation of Cal. Bus & Prof. Codes 17200 et seq.

185.  The actions of each and all of the defendants, through their participation in the enterprise, constitutes the solicitation of a sale or order for sale of services at the residences of prospective buyers, by means of a telephone without clearly, affirmatively, and expressly revealing at all times of the initial contacts with prospective buyers and before making any other statement ( except greeting) or asking the prospective buyer any other questions, that the purpose of the contact is to effect a sale, the identity of the person making he solicitations, all in violation of Cal. Bus. & Prof. Code 17200 and 17500.3 (a).

186. The actions of all the defendants each and all through their participation in the Enterprise, constitutes, in course of doing business in California and advertising to consumers in California, the making of false or misleading advertising claims, including claims that purport to be based on any fact , all in violations of Cal. Bus. & Prof. Code 17200 adn17508 (a)

187. As proximate result of the defendants conduct defendant wrongfully acquired from the plaintiffs by means of unfair competition money in the amount to be proved at trail, but which in any event exceeds $555,000.00.

188. The Plaintiffs are entitled to recover from defendants, jointly and severally, the amounts defendants wrongfully acquired from them by means of unfair competition, plus the cost of this suit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment against all Defendants, jointly and Severally, as follow:

1. Compensatory and consequential damages in an amount commensurate with and owing to the acts and omissions of the Defendants;
2. Punitive damages against Defendants in an amount to be determined at a jury trial;
3. As to the RICO for Relief, threefold the damages sustained by the Plaintiffs, including but not limited to the cost of investigations, the costs of the law suit (including reasonable attorneys and legal' fees), and post-judgment interest.
4. Equitable relief as may be appropriate pursuant to 18 U.S.C. § 1964(a) and other law, including but not limited .
5. Reasonable attorneys' fees and costs; and
6. Plaintiff is not an attorney and is under emotion duress, as a result of Defendant's actions.
7. Plaintiff respectfully submits her demand for a jury trial.
8. That the defendants have unfairly competed with the Plaintiff in violation of the Cal. Bus. & Prof Code 17200
9. That the defendants have been unjustly enriched by their acts.
10. That the defendants have intentionally interfered with the Plaintiff's perspective economic advantage
11. Requiring the defendants to account for and pay over to the Plaintiff, defendant's profit and all damages sustained by the Plaintiff due to the losses derived from not having explicit use of equipment for four years but no less than $555,000.00.

12. Awarding to Plaintiff compensatory damages suffered by the Plaintiff according to proof;

13. Awarding to Plaintiff interest on compensatory damages at the highest rate allowed by law.

14. Awarding to Plaintiff punitive damages in an amount sufficient to deter and punish defendants.

15. Any and all requests as written in prior relief and claims.

16. Additionally other and further relief as the Court deems just and proper

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all the issues triable by jury.

Dated this 29th day of May, 2008

Noreen Rucinski

On behalf of Schneider Rucinski Enterprises

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of May 2008, I caused to be mailed a true and correct copy of the foregoing to the following by the method described below:

*By Mail Delivery:*

   *BY U.S. Mail, postage prepaid:*

Noreen Rucinski

# Exhibit Table

A. Defendants Invoice for Plaintiff for purchase instead of Client

B. Purchase Order for Defendant

C. Plaintiff's checks to Defendant

D. Email from Plaintiff to Defendants President

E.  UCC -2 Financing Statement

F.  Attorney Narsete Nasty letter of denial

G. Equipment Lease Agreement ELA between Plaintiff and
   Defendants dated May 11 2004

H. Email correspondence acknowledging Stratasoft was gong to
ship the equipment and a schedule by Jason Pace. May 24 2004

I. Emails to and from Defendants from Plaintiff

# EXHIBIT A

| Description | Investment |
|---|---|
| StrataDial® Engine Software 120 Agent by 360 Line Licenses | $ 173,985.37 |
| StrataDial® List Management and Reporting System Licenses | *-Included-* |
| 120 - Telephone Sale Representative (TSR) Blended Agent Licenses | *-Included-* |
| StrataDial® Telephony Server<br>❑   120 - Agent Station Ports<br>❑   360 - Telephone Line Ports | *Customer Provided* |
| StrataDial® Supervisor Voice Monitoring Units<br>❑   Supporting XX stations | *Customer Provided* |
| 1 Year Warranty on Software | *-Included-* |
| On-Site Setup/Installation | *-Included-* |
| Minimum 3 Days On-Site Training | *-Included-* |
| DynaCall | *-Included-* |
| Strata Q/A  2 licenses | $ 6,500.00 |
| StrataVM | |
| Web Functionality *(Optional)*<br>❑   Text Chatting<br>❑   Web Collaboration and Co-browsing (unlimited)<br>❑   E-Mail Management | *–Please Call For a Competitive Quote-* |
| **Total Investment for** *Touch Asia* | **$180,485.37 USD** |
| *All prices are firm for ninety days from the date of   and are exclusive of tax and freight.* | |

# EXHIBIT B

# *Schneider Rucinski Enterprises*

**PO/Invoice**
**6042004**

3344 N Mt View Dr
San Diego CA 92116
619- 282-7977

**Sold To:  Schneider Rucinski Enterprises**

**Supplier: Stratasoft**

6401 Southwest Freeway
Houston, TX 77074
1-800-390-1157

Ship To:  **Touch Asia Call Cente**

**7214-B Florin Mall Dr.,**

**Sacramento CA**

916) 427-2932                    95823

| Description | Product Number | QTY | List Price | Extended List Price | Extended Discount |
|---|---|---|---|---|---|
| Rack Mounted Telephony Server (Including Monitor, NIC Card, Modem, Mouse Keyboard | | | | | |
| DM/V960A-4T1 Quad Span Dialogic Card | *see bleow | 5 | | INCLUDED | |
| DM/V480A-2T1 Dual Dialogic Card | | 1 | | INCLUDED | INCLUDED |
| DM/V2400A Dialogic Resource Board | | 1 | | INCLUDED | INCLUDED |
| Dialogic Channel Card | * see below | 2 | | INCLUDED | INCLUDED |
| Dialogic Resource Card | *see bleow | 1 | | INCLUDED | INCLUDED |
| Alliance Systems Telephony Server Chassis | *see  bleow | 1 | | INCLUDED | INCLUDED |
| Stratsoft maintenance for one year | *PER STATA | 1 | | INCLUDED | INCLUDED |
| StrataDial® Engine Software 120 Agent by 360 Line Licenses | | 360 | | INCLUDED | INCLUDED |
| StrataDial® List Management and Reporting System Licenses | | 2 | | INCLUDED | INCLUDED |
| 120 - Telephone Sale Representative (TSR) Blended Agent Licenses | | 120 | | INCLUDED | INCLUDED |
| Strata Q/A  2 licenses | | 2 | | INCLUDED | |
| | | | | | |
| Dell System includes | | 2 | | INCLUDED | |
| PERC4/Di Embedded RAID Controller | | 2 | include | INCLUDED | |
| 2 x 36Gb 10k RPM U320 SCSI Hard Drives (RAID 1) | | 2 | include | INCLUDED | |

*SEE BELOW FOR OTHER INVOICED ITEMS AND SERIAL NUMBERS                    Total Extended List Price:        $254,995.00
                                                                          **Total Extended Discounted Price:**

AGREED TO TERMS LIST OF EQUIPMENT AND LICENSES TO SCHNEIDER RUCINSKI ENTERPRISES        DEPOSIT   :        128.000.00
AGREED TO TERMS LIST OF EQUIPMENT AND LICENSES TO SCHNEIDER RUCINSKI ENTERPRISES        NET 60    :        63,000.00
AGREED TO TERMS LIST OF EQUIPMENT AND LICENSES TO SCHNEIDER RUCINSKI ENTERPRISES        NET 90    :        63,000.00

| | | | |
|---|---|---|---|
| DMV480A2T1 | Dialogic Station Card | HX013089 | |
| DMV480A2T1 | Dialogic Station Card | HX013090 | |
| DMV480A2T1 | Dialogic Station Card | HX013091 | |
| DMV960A4T1 | Dialogic Channel Card | HX013807 | |
| DMV960A4T1 | Dialogic Channel Card | HX010831 | |
| DMV960A4T1 | Dialogic Channel Card | HX015441 | |
| DMV960A4T1 | Dialogic Channel Card | HX015440 | |
| DMV2400APCI | Dialogic Resource Card | HX015028 | |
| TYPEII-ARC | Alliance Systems Telephony | E042604-15 | |
| 15SVGA | Hansol 15" SVGA Monitor | G15590350900589 | |
| **SERIAL #** | **DESCRIPTION** | **ITEM #** | **ORDERED** |
| | Cable, CTBus Assy, 8 Drop | CAB0688 | 1 |
| | Cable ATX 4P to P4 12V | CAB3050 | 1 |
| | DMV960A4TIPCI | DIA4401 | 4 |
| HX015451 | | | |
| HX015444 | | | |
| HX015443 | | | |

| HX015442 | | | |
| --- | --- | --- | --- |
| | DMV2400APCI | DIA453 | 1 |
| | CDROM EIDE 52x Int. | PCCDR0015 | 1 |
| 1390398 | | | |
| | I-Series 5000 Enclosure | PCCHA5400 | 1 |
| E051204-18 | | | |

SCHEDULE A

**(Legal Description of the Property)** Excel Switch

Serial Number

Date Of Manufacture : 9/29/99

Serial Number :086068

32 T1's

24 E1's

1 – EXCPU Card with I/O

1 – Power Supply Card

1 – SS7 LC Card

1 – ISDN PRI Card

AS described by Bong Tech for US COLO

# EXHIBIT C

**NOREEN RUCINSKI**
SCHNEIDER RUCINSKI
344 N MONT VW DR
SAN D, CA 92116

6106

31-7188
1240

DATE *May 10   04*

PAY TO THE
ORDER OF *Stratosoft*                                    $ *50,000*

*Fifty Thousand dollars*                               DOLLARS

American Express Centurion Bank
Midvale, Utah 84047

MEMO *Rudy Software*

⑆1240718891⑆ 9054749101611⑈386106

---

**NOREEN RUCINSKI**
SCHNEIDER RUCINSKI
3344 N MONT VW DR
SAN D, CA 92116

6109

31-7188
1240

DATE *May 21 04*

PAY TO THE
ORDER OF *Stratosoft*                                    $ *50,000 00*

*Fifty Thousand dollars   no/t*                          DOLLARS

American Express Centurion Bank
Midvale, Utah 84047

MEMO *Rudy*

⑆1240718891⑆ 9054749101611⑈386109

---

**NOREEN RUCINSKI**
SCHNEIDER RUCINSKI
3344 N MONT VW DR
SAN D, CA 92116

4120

31-7188
1240

DATE *June 4   04*

PAY TO THE
ORDER OF *Stratosoft Corp*                               $ *77,000. 00*

*Seventy Thousand dollars   no/t*                        DOLLARS

American Express Bank, FSB
Payable Through American Express Centurion Bank
Utah R/T 1240

MEMO *Asia Park C&D Cash*

⑆1240718891⑆ 9054749101611⑈384120

# EXHIBIT D

**noreen**

| | |
|---|---|
| **From:** | noreenrucinski [noreenr@cox.net] |
| **Sent:** | Sunday, August 19, 2007 9:42 PM |
| **To:** | 'J̶u̶l̶i̶e̶ S̶i̶m̶p̶s̶o̶n̶' |
| **Subject:** | FW: Regarding Stratasoft matter |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Blue |
| **Attachments:** | stratasoft invoice.doc |

**From:** Noreen Rucinski [mailto:noreenr@cox.net]
**Sent:** Wednesday, December 07, 2005 3:56 PM
**To:** 'Michael Narsete'
**Subject:** RE: Regarding Stratasoft matter

Michael Narsete,

I am writing this with in hours of our conversation for follow up and confirmation.  I am attaching the Invoice that was sent with the checks as well. You already have the lease from Jim Long.

On this initial conversation with myself.  You asked questions relating to:

1. date:   may of 04
2 .amounts of checks and time frames : may of 04 or June and totally for the contracted amount

3. I was told the contract signed would only be relating to the maintenance and would have to be signed by the customer of location.

You have asked what I want from stratasoft.

I want first for Stratasoft to acknowledge what they have done and the position they have put my company in regarding ownership of equipment.
The sales people in efforts to consummate a sale when around your procedures when they knew it was to be a lease.  Not anything other than a lease.

I am asking for proper documentation required by law as receipt and full invoice showing paid and remaining balances as of June of 04 for the checks that were cashed.  I want to make sure all showing that all of the items are are free and clear from any liens'.  This is how I was advised by your salespeople in 04 verbally that I followed through with on emails. I was told I owned the equipment and software licenses when  the checks cleared your banks.  Please review invoice sent with checks. II am not aware that Stratasoft made any arrangements or other contracts with my customer after I sent the checks in or during that time. I was told they were only for maintenance.  Any further payments are after the initial payment for the equipment should not be effected by the receipt of goods, or as by how they look as of the dates so you can feel free to send separate payment documentation that you should have been sending all along reflecting payments.
You must first show the sold to Schneider rucinski enterprises as you do with any third party leasing company that you have procedures for. Yet it was not done.
I want to see all bills sent to the customer Touch Asia showing payments.

Gary,
I would really like to be nice about this but my buttons are being pushed.
third time asking for a response.
i am calling  you  guys  first , then my attorneys  with no response
noreen

You are being asked this one last time as a courtesy.  If you do not respond we will conclude you do not show any receipt of any kind for any equipment in the Stratasoft inventory and the books of statrasoft or any of its companies pertaining to Statrasoft.
I find it regrettable that you feel that conferring with the proper authorities a threat. I want to make this perfectly clear,  you were never threatened with anything. You were informed actions will need to take place regarding your paperwork and ethics and sales the proper authorities. Please be advised your slander wont be accepted as displacement of your companies lack of response.
Please answer the question regarding any purchase of equipment was done by Schneider Rucinski Enterprises during the year of 04? _____yes or no_____.


regards
Noreen

---

**From:** Gary S. Johnson [mailto:Gary.Johnson@i-sector.com]
**Sent:** Monday, November 14, 2005 9:09 AM
**To:** Noreen Rucinski
**Cc:** Gregg Enders
**Subject:** RE: i haven't heard from you?

Noreen,

It is unfortunate that our most recent phone call resulted in your threat of legal action against the company and me personally.  As I have said on every occasion we've spoken, I can't locate any documentation or any employees here that support your contention that you own the Stratasoft equipment.  We have a license with Touch Asia and the account has been paid in full.  You have provided us with a copy of your lease agreement with Touch Asia.  I would encourage you to take whatever action available to you to collect funds owed you based on the terms of the lease.

I can certainly understand your frustration with Touch Asia if they have failed to honor the lease agreement.  I hope you can see that based on the information and documentation available to me, Stratasoft can not participate in your request to terminate the software license we have in place with Touch Asia.

**Gary S. Johnson**
Vice President Operations

Stratasoft, Inc.
6401 Southwest Freeway
Houston, TX  77074

Office:   713.795.2631
Fax:      713.795.2600

www.stratasoft.com
gary.johnson@stratasoft.com

---

**From:** Noreen Rucinski [mailto:noreenr@cox.net]
**Sent:** Wednesday, November 09, 2005 3:32 PM
**To:** Gary S. Johnson
**Subject:** FW: i haven't heard from you?

No matter Stratasoft has accepted funds for said equipment period. If I wanted this to go through the customer then i would have written the check to them and they would have paid you. That was not done and I want either the equipment picked up and shipped to my location or my funds back.

I can not go after the gear if I don't have a bill of sale that I was told was coming in the mail.
I have called and asked and was deferred.

My check continue the bill of sale and position

---

**From:** Gary S. Johnson [mailto:Gary.Johnson@I-sector.com]
**Sent:** Monday, November 14, 2005 1:00 PM
**To:** Noreen Rucinski
**Cc:** Gregg Enders
**Subject:** RE: please repond to the question

Noreen,

At this point I don't believe continued communications of this type are productive as I believe that I have already fairly and clearly communicated my findings.

In light of the fact that you have now notified me verbally and in writing of your intention to take legal action both with your lawyer and the police department, I would suggest that you direct all future communications to Stratasoft legal counsel.

**Gary S. Johnson**
Vice President Operations

Stratasoft, Inc.
6401 Southwest Freeway
Houston, TX 77074

Office:    713.795.2631
Fax:       713.795.2600

www.stratasoft.com
gary.johnson@stratasoft.com

---

**From:** Noreen Rucinski [mailto:noreenr@cox.net]
**Sent:** Monday, November 14, 2005 1:52 PM
**To:** Gary S. Johnson
**Subject:** please repond to the question

Gary,

Your verbal response in our call, states that according to your review in to a sale of any stratasoft system both hardware and software to Schneider Rucinski Enterprises is none existent. Is that the case? I need clear and direct information regarding the email from Mike Bridges showing equipment that was shipping and is now working at Asia Touch Inc.

Ms. Watkins knows the truth and will have to testify to the careless disregard, which is all i have going.

I don't own any equipment as far as Mr. Johnson is concerned so how can i get any money for something the supplier states I don't own or even go to court on to get possession of?

As you are aware I have stated this is $165,000.00 including financing without the late fees and loss of business from my side which is directly from as I see it the Stratasoft misuse and misdirection of funds given to Stratasoft and it fiduciary responsibility. The funds owing now on the account with out attorney fees which are in the contract are in excess if over $250,000.00 combined, I am sure there is something to work with here.

please also be aware how Gary Johnson, took an email from nov 9 that he responded to with "he is checking into it" and used it in this volley of emails to work his side, pathetic.

please advise me how you would like to proceed on this? I would like you to proceed with this with out attorneys if you would also agree to look in to settling this.


 Warm regards

Noreen Rucinski




Mr. Long,

A few months ago I called and asked your help on two levels. One was in getting a receipt for the purchases of equipment that I did to stratasoft. You asked me to deal with the new staff at Stratasoft. I did so and with no only no success but with more harassment than I have ever experienced so far.

Mr. Long let me ask you a simple question. If your team had purchased some Cisco equipment by check that check was cashed and the funds taken from your accounts and banked with that supplier of that Cisco equipment. Does that mean you own it. is there any other way that you could not own it? Even if that supplier failed to give you the receipt (bill of sale) of that equipment does that mean that you never paid for the equipment? That you don't own and hold that equipment's free and clear title?

I need some answers to these simple questions.

Your staff is doing what i would consider against the law. they are keeping me from claiming my equipment that I have paid for by your company.

the company that now has the equipment only paid a portion after I paid the first and supposedly was to pay the rest of the gear and was taken out of the loop by stratasoft.

In the first discussion with Ms Watkins regarding company policies and procedures it was clear she was experienced in working with leasing and customer payment regarding stratasoft.
 I also, felt she was a very honest person from talking with her and decided to let her know who I was and the company I work for.  At which time she pulled the file.  I am letting you know this was at least a 45 minute call, where as she informed us the papers in the file on the account of Touch Asia was paid. The papers showed  was indeed it was brought in as a lease, paid by Schneider rucinski enterprises check and an amex check from noreen rucinski , yet no paperwork was done to that effect of a lease, just the credit application and followed up with cash three months later more to the order.  the account files do not show the invoice supplied to the sales people when the checks were overnighted.  Ms. Watkins did indicate,  she remembers she saw the other checks and at the time understood what was going on regarding the leasing but not informed of it other than sales talk,  but she does understand now that it was paid by a leasing company as she indicated to us on the phone.

I informed her of what Mr. Johnson is representing to me she said he did not come to her at all. She said she would go to him and straighten it out, yet instead...

She has now been asked to not tell me anything nor allowed to talk to me.  Which shows cover up.
This can only be determined with the conversation I had with Gary Johnson, last week from him, indicating there is nothing in the files and No information regarding anything on my company paying for anything to Stratasoft, or a leasing company as given by the client.
With the procedures and polices in place with Stratasoft from my talking with a seasoned experienced person within Stratasoft, it would appear I am correct, which makes the equipment is mine.  Mr. Johnson careless disregard of policies of Stratasoft and the procedures of the accounting department of Stratasoft have left your company open to a lawsuit that I am not inclined to fight on you with but will to either get my money back or the equipment and software ownership and key.  I would think in the day of all these issues with Sarbanes Oxley, I would question internally how this could have happened? and the cover up now?  I am hoping my thoughts f cover up or false information is all a misunderstanding on behalf of Stratasoft especially the obvious checks cashed by Stratasoft.
 I can only ask you to do one of two things.
Give me my money back, for gear Gary Johnson's say  I do not own.  Which is the first thing I am going to ask for.  Or as we discussed  go to your customer for payment as you should have last year. I none of the above, then I would need an invoice with the software software and Key for the system for my use.

. YOU should know this new hire, Gary Johnson infact did NOT go to the account manager, as he told me or credit, who handled the financing regarding that account. ( since there is only one for the whole company Ms. Watkins) he did NOT talk to the customer and has put me off completely. He incited me to an argument when he told me no money and or funds and or conversations I have had with Stratasoft constitute to anything and show no business with Stratasoft. I wonder how you would feel being in my shoes.  I also think he is doing this since I am female in his way of talking with me.  I want you to understand this was a favor for your sales staff to fund this customer in this fashion.

fact that your company provided financing for this Stratasoft customer.  Your company might possibly therefore have a purchase money security interest in the system Stratasoft sold to this customer.  Stratasoft simply cannot take steps to damage this customer's business operations because you are asserting a claim against this customer.  A court must decide the outcome, not Stratasoft.  We will provide you with a "receipt" for the funds you paid to Stratasoft on behalf of this customer, providing details of the payment, if that is what you desire.  Please respond to this email and tell me that this is what you want and we will promptly provide you with such an above-described receipt.

Stratasoft's lawyer would be happy to discuss this matter with your lawyer if you wish.  His name is Michael Narsete and he can be reached at 713.622.7040 or via email at the address on this email (he is copied).  I want to reiterate again that we are sympathetic with respect to the situation you and your company are in but regret that we cannot take steps outside the bounds of the requirements of the law to help you.

Jim Long

> -----Original Message-----
> **From:** Noreen Rucinski [mailto:noreenr@cox.net]
> **Sent:** Tuesday, November 22, 2005 12:50 PM
> **To:** Jim Long
> **Subject:** FW: please respond to the question

---

> **From:** Noreen Rucinski [mailto:noreenr@cox.net]
> **Sent:** Monday, November 21, 2005 12:10 PM
> **To:** 'jimlong@isector.cok'
> **Subject:** FW: please respond to the question

> Mr. Long,

> I am writing this to prevent a potential lawsuit, that was discussed with Gary Johnson, when he has formed me last week of his findings regarding my funds to Stratasoft.
> I didn't send you the below information last week without more work on my side.  I called to follow up with Greg as you instructed me to last time before contacting you again.

> Upon hearing Greg was out of town,  I asked to talk to the credit or account manager.  In my efforts to understand Stratasoft policies regarding leasing. Ms Watkins told us that, ( there were two others on the phone with me) she deals with lease companies all the time from Stratasoft side, also is aware of the when a customers wants to use their own. She informed us that there was a procedure that the sales team would go to her and she would set up an account. She would work with the lease company directly usually,  from a contact the customer provides, and  Stratasoft would supplier the proper documentation showing ownership and key for software to the leasing company when the funds are paid to stratasoft.  She informed us that the customer would only own the gear if the lease company paid the customer who would then pay stratasoft.   there was a clear and cut procedure from her conversation.

**From:** noreenrucinski [noreenr@cox.net]
**Sent:** Thursday, January 17, 2008 10:05 AM
**To:** 'A.P.Lehman'
**Subject:** email and note from Jim long, parent company president to show conspiracy to commit fraud
Letter from Jim long parent company of stratasoft , isector


**From:** Jim Long [mailto:jlong@i-sector.com]
**Sent:** Tuesday, December 06, 2005 7:24 PM
**To:** Noreen Rucinski
**Subject:** Regarding Stratasoft matter

Noreen,

I received your voice message of today.  I apologize for not having gotten back with you since receiving your email of November 22nd.
After receiving your email I decided to further investigate this matter since you mentioned litigation.  I have met with our legal counsel on this matter.  Stratasoft's position includes the following:

- Stratasoft has no contract with your company, but rather with a third party which you apparently, evidenced by documentation and your previous conversation with myself and with others at Stratasoft, financed.
- Stratasoft did indeed receive a check from your company that referenced paying for a system on behalf of our customer, the entity that you apparently provided some sort of lease financing for.
- Stratasoft is not privy to the financing relationship between your company and our customer other than to the extent Stratasoft's customer and yourself have informed Stratasoft about some sort of leasing arrangement between your company and Stratasoft's customer.
- While Stratasoft is sympathetic to your desires to be paid by Stratasoft's customer, which apparently owes your company funds for the financing provided by your company, Stratasoft has no legal power or physical ability to "cut off" this customers system as you requested of me during the telephone conversation we had some time ago.
- Your request to obtain some sort of documentation regarding the payment you made to Stratasoft on Stratasoft's customer's behalf is not unreasonable, but the documentation Stratasoft can provide cannot be a "bill of sale" but Stratasoft can provide a "receipt" for such funds Stratasoft received.  A "bill of sale" apparently has legal meaning and is a term used to describe a document that conveys a change of ownership between two parties.  Since Stratasoft has a contract with its customer, and received partial payment from such customer, and partial payment from a third party leasing company/financier, Stratasoft cannot provide a "bill of sale" to the leasing company.  Stratasoft can, however, provide a "receipt" for the payment Stratasoft received from your company evidencing that Stratasoft did in fact receive a payment of a certain amount on a certain date, via a certain check number, from your company, and applied such payment to Stratasoft's customer's transaction at the request of both Stratasoft's customer and your company.  This, together with your company's canceled check should provide the evidence that you require to show a court that you paid funds to Stratasoft on behalf of Stratasoft's (and apparently your) customer.

Stratasoft is in a difficult situation, with an obligation to serve its customer and a desire to do the right thing for you.  We cannot manufacture evidence or in any way change the facts.  It appears to me, and to our legal counsel, that your company would have certain legal rights by virtue of the

# EXHIBIT E

Page 3

# UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| 19. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT | | |
|---|---|---|
| 19a. ORGANIZATION'S NAME | | |
| TOUCH ASIA OUTSOURCING SOLUTIONS, INC. | | |
| OR | 19b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |

20. MISCELLANEOUS:

DOCUMENT NUMBER: 11317200002
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

| 21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (21a or 21b) - do not abbreviate or combine names | | | | |
|---|---|---|---|---|
| 21a. ORGANIZATION'S NAME | | | | |
| OR 21b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| Naw | Rudy | | | |
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 72/4-B FLORIN MALL DR | SACRAMENTO | CA | 95823 | USA |
| 21d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 21e. TYPE OF ORGANIZATION | 21f. JURISDICTION OF ORGANIZATION | 21g. ORGANIZATIONAL ID#, if any ☐ NONE |

| 22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (22a or 22b) - do not abbreviate or combine names | | | | |
|---|---|---|---|---|
| 22a. ORGANIZATION'S NAME | | | | |
| OR 22b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 22d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 22e. TYPE OF ORGANIZATION | 22f. JURISDICTION OF ORGANIZATION | 22g. ORGANIZATIONAL ID#, if any ☐ NONE |

| 23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (23a or 23b) - do not abbreviate or combine names | | | | |
|---|---|---|---|---|
| 23a. ORGANIZATION'S NAME | | | | |
| OR 23b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 23d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 23e. TYPE OF ORGANIZATION | 23f. JURISDICTION OF ORGANIZATION | 23g. ORGANIZATIONAL ID#, if any ☐ NONE |

| 24. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (24a or 24b) | | | | |
|---|---|---|---|---|
| 24a. ORGANIZATION'S NAME | | | | |
| OR 24b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 24c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 25. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (25a or 25b) | | | | |
|---|---|---|---|---|
| 25a. ORGANIZATION'S NAME | | | | |
| OR 25b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 25c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

FILING OFFICE COPY

# EXHIBIT F

Houston, Texas 77056

Telephone:  713/622-7040
Facsimile:  713/622-7026

December 27, 2005

Via fax and Certified Mail
Return Receipt Requested

Schneider Rucinski Enterprises
Attn:  Ms. Noreen Rucinski
3344 N. Mt. View Drive
San Diego, CA 92116

Re:    Sale of Dialer and/or Licenses to Touch Asia Call Center, Inc. by Stratasoft, Inc.

Dear Ms. Rucinski:

As you know, I represent the interests of Stratasoft, Inc. in connection with the above.

You have delivered numerous emails and/or placed numerous phone calls concerning the above referenced matter to personnel/employees of my client. Additionally, you and I have had detailed discussions concerning the above referenced topic. You have asked that we acknowledge what we have done and, further, that we provide certain documentation which you believe to be required by law, including a Bill of Sale. Lastly, you have demanded that we return to you certain payments received by Stratasoft discussed below. My client has asked that I review the relevant file materials and respond to you.

My client's file reflects that in or about April, 2004, Touch Asia Call Center, Inc. and Stratasoft executed a Software License/Equipment Sales Agreement (may be referred to as SL/ESA) whereby Stratasoft sold certain equipment and licensed software to Touch Asia. The dialer and related software licenses were delivered and/or installed for its customer, Touch Asia. Touch Asia executed a Certificate of Delivery and Acceptance concerning the hardware and software in question and for the training associated with the operation of the dialer.

The system and licenses were paid for through payments received directly from

ion. of the ... referenced above... Touch Asia executed an Equipment
nent with Schneider-Rucinski Ent. You advised me that Touch Asia made
payments to the Lessor and then stopped paying. You advised me
'sation that Schneider-Rucinski Ent. is owed a significant sum of money by
While my client understands and is sympathetic to the problems that you r
; with Touch Asia, Stratasoft will not become involved in nor assist you wi
ispute which you may have with Touch Asia. Any claims that Schneider-Rı
ιay have against the Lessee or any other responsible parties are your busine
t affect Stratasoft. Stratasoft never executed any contract or agreemen
der-Rucinski Ent. You may wish to consult with your attorney regardir
that you and/or Schneider-Rucinski Ent. may have against Touch Asi
t to the lease referenced above and/or otherwise.

Accordingly, we will not be delivering any Bill of Sale or any other
ıent as requested by you nor will my client be returning any monies or paym
they have no obligation to do so. For your records, we are happy to provi
of the checks delivered by Schneider-Rucinski Ent. (see attached).

In closing, you have, on numerous occasions, threatened litigation agaiı
Be advised that we will vigorously defend any lawsuit or any other action
ıt against my client and, where appropriate, will file the necessary counter
t all responsible parties for recovery of legal fees and other expenses.

Any further questions and/or comments you may have should be directed
and not to my client. You are instructed to communicate with me only and
yees and/or representatives of my client. If you would like I am happy to vis
to your attorney.

Please call if you would like to discuss the contents of this letter.

Yours very truly,

Michael S. Narsete

# EXHIBIT G

**Equipment Lease Agreement (Page 1 of 2)**

| Customer Information | Lease Name | Approved # 100804 |
|---|---|---|
| | Touch Asia Call Center Inc | Lease # |
| | Billing Street Address | |
| | 7314 S Paris Blvd dr          Sacramento 95823 | Customer # |
| | Equipment location (if different from above) | |
| | 650 Grand ave  Los Angeles, ca 90017 | Tax ID # |
| | Lessee Phone # 917-804-4779 | |

| Supplier Information | Supplier Name | Contact |
|---|---|---|
| | Schneider-Rockbell Ent. | Supplier Phone # |
| | Street Address City/ State/ Zip | 011-262-7877 |

**Equipment Description**

| Quantity | Make, Model | Serial Number |
|---|---|---|
| 1 | All software and hardware for attached contract of Starbeach.<br>Excel switches will serve as collateral during 18 months. | To be given no later than Thursday may 13 2004 |

**Term Purchase Option**

(Check one applicable box   If no box is checked or if more than one box is X'ed, the Fair Market Value Purchase Option will apply.)

X   Fair Market Value Purchase Option

X   10% Price Purchase Option as long as all terms and conditions of the contract have been meet with.

PLUS APPLICABLE TAXES

**Term and Lease Payment Schedule**

| Commencement Date of Lease: May 10, 2004 | You agree to pay at the time you sign this Lease. |
|---|---|
| Total Lease Term (# of Months): 18 | A) Number of Advance Payments: First and second = $9,000.00 |
| Monthly Payment Amount $9,000.00 | B) Sales/Use Tax on Advance Lease Payment: = 700.30 |
| Additional Provisions: Down payment of $30,000 Due upon signing | C) One-time Documentation Fee and shipping of equipment = $100.00 |
| | D) Total of A + B + D = $ 9,800.30 this includes first month taxes |

PLUS APPLICABLE TAXES

THE UNDERSIGNED AGREES TO ALL OF THE TERMS AND CONDITIONS ABOVE AND ON THE REVERSE OF THIS LEASE AND ANY ATTACHED SUPPLEMENTS AND SCHEDULES WHICH ARE MADE A PART OF THIS LEASE. THIS IS A NON-CANCELABLE LEASE FOR THE FULL TERM SHOWN ABOVE.

Lessor, Schneider Rucinski Equipment Leasing Division

This Lease shall not be binding on us until it has been accepted and executed by an officer of the Lessor at its office.

By X _____

Print Name

Noreen Rucinski   may 12 04
Title              Date

Lessee: Touch Asia Call Center Inc

This Lease cannot be changed or amended except by an instrument in writing signed by Lessor and Lessee. The undersigned affirms that he/she is a duly authorized corporate officer, partner or proprietor of the above Lessee.

By _____

Print Name _____   5-11-04

Title President          Date

**GUARANTY**

THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS. When we use the words "you" and "your" in this Personal Guaranty, we mean the Personal Guarantor(s) indicated below. When we use the words "we", "us" and "our" in this Personal Guaranty, we mean the Lessor named above.

In consideration of our entering into the lease agreement identified above ("Lease"), you unconditionally and irrevocably guarantee to us, our successors and assigns the prompt payment and performance of all obligations of the Customer identified above ("Lessee") under the Lease. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Lease or against the equipment covered by the Lease. You waive all defenses and setoffs, including those of protest, presentment and demand. You agree that we can revoke, extend or otherwise modify the terms of the Lease and you will be bound by such changes. If the Lessee defaults under the Lease, you will immediately perform all obligations of the Lessee under the Lease, including, but not limited to, paying all amounts due under the Lease. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Lease. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Lessee in the event you must pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize us or any of our affiliates to obtain credit bureau reports regarding your personal credit and make other credit inquiries that we determine are necessary.

THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. YOU CONSENT TO THE JURISDICTION OF ANY COURT LOCATED WITHIN CALIFORNIA. YOU EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY.

| X _____ | X _____   5-11-04 |
|---|---|
| Guarantor Signature | Guarantor Signature   Both Name   Date |
| Print Name          Date | Print Name          Date |
| Home Street Address/City/State/Zip | Home Street Address/City/State/Zip |
| Social Security Number          Home Phone | Social Security Number          Home Phone |

## Equipment Lease Agreement Terms & Conditions (Page 2 of 2)

This Lease has been written in plain English. The words "you" and "your" refer to the Lessee listed above. The words "we", "us" and "our" refer to the Lessor, (S/R) Schneider Rukneld Leasing Division.

1. **TERMS AND RENT.** We agree to lease to you and you agree to lease from us the property listed herein or in any attached Schedule, plus any replacements, additions and accessories attached to the property (the "Equipment") for the Lease term stated above. This Equipment and the Supplier have been selected by you and by executing this Lease, you request us to order the Equipment, arrange for its delivery to you and pay for the Equipment upon your acceptance of it. You agree to pay to us the monthly rental shown above for the number of months of the Lease term. Rent for the Interim Rental Term ("Interim Rent") or any other partial rent period will be prorated on a daily basis in an amount equal to 1/30th of the monthly Rent. Rental payments are due monthly beginning in advance on the date you accept the Equipment. Upon receipt of the Equipment, you shall immediately inspect the Equipment and within 5 days deliver to us a signed Nonacceptable letter or acceptance Certificate accepting the Equipment as satisfactory for this Lease. With a 25% restocking fee and/or any applicable fees done by supplier.

2. **DISCLAIMER OF WARRANTIES.** We are leasing the Equipment to you "AS IS". WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE MERCHANTABILITY AND PERFORMANCE OF THE EQUIPMENT OR THE EQUIPMENTS FITNESS FOR A PARTICULAR PURPOSE OR ITS COMPLIANCE WITH APPLICABLE LAW. You agree not to make any claim for any reason against us for consequential damages. You acknowledge you have been advised that you may have rights against the supplier of the Equipment and that you should contact the supplier for a description of any such rights. So long as this Lease is not in default, we assign to you any warranties received by us in connection with the Equipment.

3. **NONCANCELABLE LEASE.** This Lease cannot be canceled and you agree that all payment obligations are unconditional.

4. **GOVERNING LAW.** You agree that this Lease shall be governed by the laws of the State of California. You agree that we may bring any action to enforce any provision of this Lease in the County of San Diego, California and you consent to personal jurisdiction in either state or federal court. You agree to binding arbitration should S/R (only) requests it. By signing this document you will not contest arbitration if used. This arbitration will follow the published guidelines for San Diego.

5. **LATE CHARGES.** If any rent or other payment due under this Lease is not paid within 10 days after its due date, you agree to promptly pay a late charge of 5% of the past due payment, subject to a $25 minimum, for those payments under 30 days past due, plus interest on any payments over 30 days past due at the rate of 1.5% per month. However, in no event shall these late charges exceed the maximum lawful charges.

6. **OWNERSHIP OF EQUIPMENT.** We are the owner of the Equipment and you have no rights to the Equipment except as provided for in this Lease. You agree to keep the Equipment clear of all liens and claims.

7. **LOCATION AND USE OF EQUIPMENT.** You agree to use the Equipment only for business purposes and in compliance with applicable laws. You agree to keep the Equipment at the address listed herein or in any Schedule A and not change the location of the Equipment without our advance written consent. At the end of the Lease term (or any renewal term) you agree, at your expense, to return the Equipment to us to our address above, or such address as we may designate in writing, in the same condition it was delivered except for ordinary wear and tear.

8. **EQUIPMENT MAINTENANCE.** You are responsible, at your expense, for installing and maintaining the Equipment in good working order. If any Equipment is damaged, lost or does not work satisfactorily for any reason, you agree to continue to pay all monthly rentals. You shall not make any alterations to the Equipment without our advance written consent. You agree that we may inspect the Equipment at any reasonable time.

9. **INDEMNITY.** You agree that we are not responsible for any losses or injuries caused in connection with the ownership, installation, use, storage, or design of the Equipment. You agree to reimburse us for and defend us against any claims, including negligence and strict liability, whenever made for losses or injuries caused by the Equipment.

10. **TAXES AND FEES.** You agree to pay when due all taxes, filing fees, license fees, interest and penalties relating to this Lease and the Equipment. If we make any of these payments, you agree to reimburse us upon demand. If you have been given a $1.00 end of term purchase option, you agree to directly file and pay when due all property taxes relating to the Equipment during the term of this Lease. Upon receipt of our invoice, you agree to pay us an administrative fee equal to 18% of the property tax bill, subject to a minimum of $6.00 and a maximum of $30.00, if during the term of this Lease we file and pay all property taxes relating to the Equipment. Upon receipt of our invoice, you agree to pay to us a Documentation Fee to cover our costs of preparing this Lease. You shall pay to us a fee of $25.00 for every check that is returned to us as unpaid by your bank.

11. **RISK OF LOSS.** You are responsible for any loss or damage to the Equipment and/or caused by the Equipment until all of your obligations under this Lease have been fulfilled. You agree to immediately notify us of any such losses or damages and of any insurance claims pertaining to the Equipment. If the Equipment is lost, stolen or damaged, we may require you to promptly repair the Equipment to our satisfaction or replace the Equipment with equipment of equal value, or pay the remaining balance of this Lease (discounted to its present value at a rate of 5% per year) plus any end of term purchase option amount.

12. **INSURANCE.** You agree to keep the Equipment fully insured against loss until this Lease is paid in full, with any loss payable to us. You also agree to obtain a liability insurance policy that is acceptable to us and to include us as an insured on that policy. Before this Lease begins and throughout the term of the Lease, you agree to provide us with the satisfactory evidence of the required insurance. If we obtain any of the required insurance, you agree to pay to us on demand the cost of that insurance, including tracking or other fees, insurance service fees, the insurance premium and related finance charges. You agree that nothing in this Lease will create an insurance relationship between you and us. Once this lease is done you will have insurance letter with in 48 hours or be in breach of this contract.

13. **ASSIGNMENT.** You agree that you have no right to sell, transfer, assign or sublease the Equipment or this Lease without our advance written consent and payment to us of an assignment processing fee. You agree that we may sell or assign this Lease or the Equipment without notice to you, and that our assignee shall have all of our rights but none of our obligations under this Lease. You agree that the rights of our assignee will not be subject to any claims, defenses or setoffs that you may have against us.

14. **DEFAULT AND REMEDIES.** You are in default if you fail to pay any monthly rental when due, or fail to comply with any requirement of this Lease or any requirement of any other obligation to us and/or any requirement of any software license agreement, system support agreement or installation agreement made between you and the supplier named herein. Upon such default, we may require you to immediately pay the remaining balance of this Lease (discounted to its present value at a rate of 5% per year) and return the Equipment to us in good condition. You agree that we are not required to repossess the Equipment and, if the Equipment is not returned to us, you agree to pay to us the value of the Equipment as of the date of your default. If we choose to repossess the Equipment, you agree that we can enter onto your premises and take possession of the Equipment without liability to you for trespass or other damages. We may also use any remedies available to us under the California Commercial Code or any other law. You waive any rights you may have under Section 10506 through 10522 of the California Commercial Code. You agree to pay all of our costs required for the enforcement of this Lease including attorney's fees and the costs of repossessing, storing and selling the Equipment.

15. **RENEWAL.** Unless you have returned the Equipment to us this Lease will be automatically renewed on a continuing month-to-month basis at the end of the original Lease term at the highest Monthly Rental amount in effect during the last 12 months of this Lease. You can terminate this extended/renewed by sending advance written notice to us. Such termination shall be effective 30 days after our receipt of such notice, provided that you have returned the Equipment to us or purchased the Equipment from us by that termination date.

16. **PURCHASE OPTION.** If it is indicated herein that you have been given an end of term purchase option and if you are not in default under this Lease, you may purchase all of the Equipment at the end of the Lease term for the stated price plus applicable taxes. Such purchase of the Equipment shall be "AS IS, WHERE IS" and we make no warranties of any kind. If the purchase price is "Fair Market Value " and we and you cannot agree on such value, you may, at your expense, retain an independent appraiser acceptable to us and such appraisal shall be binding.

17. **MISCELLANEOUS.** You agree that this Lease is the entire agreement with us pertaining to the Equipment and it cannot be changed except in writing. You agree that any delay or failure by us to enforce our rights under this Lease does not prevent us from enforcing any rights at a later time. You agree that we can sign any applicable UCC financing statement as attorney-in-fact for you until such time as all of your obligations to us have been fulfilled. If requested during the term of this Lease, you agree to promptly provide us with genuine and accurate copies of your current balance, sheet income statement and tax returns. This Lease is binding upon the successors and assigns of you and us.

# EXHIBIT H

## Noreen

**From:**    noreen [noreenr@cox.net]
**Sent:**    Friday, May 30, 2008 1:00 PM
**To:**      'noreenrucinski'
**Subject:** FW: Touch Asia


Noreen Rucinski
Dir. Strategic Business Development
Schneider Rucinski Enterprises
3344 N Mt. View Dr
San Diego CA 92116
619-282-7977 (O)
619-279-2002 (C)

noreenr@cox.net
noreen@c4usolutions.com

**From:** Noreen Rucinski [mailto:noreenr@cox.net]
**Sent:** Tuesday, February 21, 2006 7:36 PM
**To:** 'wmschey@gmail.com'
**Subject:** FW: Touch Asia

this was when the checks and wires were first done. my invoices showed Schneider rucinski and they were suppose to send back the paid invoices and didn't
noreen


**From:** mikebridges [mailto:mikebridges@hctc.net]
**Sent:** Friday, June 04, 2004 12:16 PM
**To:** noreen rucinski
**Subject:** Re: Touch Asia

Noreen.
Just make the overnight package to:
Stratasoft
6401 Southwest Freeway
Suit 201
Houston, Texas  77074

PLEASE GET IT OUT TODAY  !!

----- Original Message -----
**From:** noreen rucinski
**To:** mikebridges
**Sent:** Friday, June 04, 2004 1:49 PM
**Subject:** Re: Touch Asia

i want to make sure of the address you want it sent to mike,
PO Box, 4346 dept 523
Houston TX 77210-4346?

also please have the invoice redone, correctly to show Schneider rucinski enterprises
3344 N Mt View Dr
San Deigo Ca 92116  as the sold to:
thanks as soon as possible and emailed back to me .


----- Original Message -----
**From:** mikebridges

5/30/2008

**To:** Noreen
**Cc:** Jason Pace
**Sent:** Thursday, June 03, 2004 3:36 PM
**Subject:** Fw: Touch Asia

Noreen,

Here is the wire transfer info you needed.  Please be sure it is here tomorrow (Friday).
Thanks
Mike
----- Original Message -----
**From:** Destiny Bafico
**To:** 'mikebridges' ; Julie Watkins ; Jason Pace
**Cc:** Kim Kleypas ; Tim Grothues
**Sent:** Thursday, June 03, 2004 5:13 PM
**Subject:** RE: Touch Asia

Here are the wire transfer instructions.

**Please fund by wire transfer to:  Southwest Bank of Texas, ABA Routing
Number 113011258, For further credit to I-Sector Corporation, Lockbox
account number 0133329**

Kim / Tim - If this check is returned, please redeposit (see below).

Thanks.
*Destiny A. Bafico*
*Global Outsourcing Solutions, Inc.*
www.global-outsource.com
Direct Office:  (713) 795-2646
Toll Free:     (888) 782-4357
Facsimile:     (713) 795-2600
destiny.bafico@global-outsource.com

**AMEX:  ISR**

..........................................................................................................................................................
*This communication contains privileged, confidential and/or proprietary information and is only intended to be read by the recipient.  If you have received this*
*message by mistake, please delete its contents immediately or call the above sender at 713-795-2670.  Thank you.*
..........................................................................................................................................................
-----Original Message-----
**From:** mikebridges [mailto:mikebridges@hctc.net]
**Sent:** Thursday, June 03, 2004 5:05 PM
**To:** Destiny Bafico; Julie Watkins; Jason Pace
**Subject:** Touch Asia

Jason,

I just received a call from American Express and Noreen Rucinski, concerning Touch Asia.
American Express made a mistake in the funding of $50K check sent by Noreen to Stratasoft for the second half
of Noreen's down payment. Amex ask us to run the check through again if it had returned and funds WOULD be
there to cover it.
Noreen is also  asking for Stratasoft info to wire transfer the balance of $27+K to us tomorrow .
Noreen's telephone number is 619.279.2002 for more inf if needed.

Thank you,
Mike Bridges

Account Executive
Stratasoft
830.238.3478
mikebridges@hctc.net

# EXHIBIT I

**From:** Noreen Rucinski [noreenr@cox.net]
**Sent:** Friday, June 10, 2005 1:51 PM
**To:** 'jason.pace@stratasoft.com'
**Subject:** RE: Touch Asia Hardware EXCEL SPREADSHEET

**Attachments:** signed rudy may 11 04 lease.doc
Jason,

I am forwarding you this information and am requesting your attorney's name and address for the company. Which you have said would be forth coming.

I am very disappointed it has come to this and realize that you just wanted payment rather than working with a funder. You knew and understood the circumstances when I couldn't get him funded. I am not going to ask again just going to file this against your company. You will see from this contract with Rudy that he doesn't own the equipment I do. Period. You are trying to protect what is not yours to protect and getting in the way. Your company has also lied according to this email which shows that I own the equipment and you had no right to give up the software key on it with out my permission and authorization. I have also sent the before and after signed lease for Rudy to me for your review as requested. At this point however, my attorney is really wanting to take this case. What I am being told here is that fraud and misrepresentation for payment is what is happening and that you and Rudy worked together to make this happen. Which is what you stated to me on the phone the other day. You should not have sold him more when he had not paid for what he owed, yet you did. This is not what I expected, from you, since you verbally, told me you would make sure I was taken care of if I funded is and did the lease after. I have that in other emails from you as well.

Enjoy your weekend. This is the first time I have has a manufacturer do this and I wonder why I don't like doing this.

Noreen

So much for your saying at the bottom, I should have heeded this

**Amex : ISR**

*"Truth is incontrovertible, malice may attack it and ignorance may deride it, but, in the end, there it is."*

*Sir Winston Churchill*

**From:** mikebridges [mailto:mikebridges@hctc.net]
**Sent:** Thursday, May 27, 2004 12:30 AM
**To:** Noreen
**Subject:** Fw: Touch Asia Hardware EXCEL SPREADSHEET

Noreen.

No contract with you is needed. If you have paid for the gear you own it.

If there is anything else we can help you with, please let me know.
We want this to be an easy project also.  Just let me know.
Thank you,
Mike

**To:** Michiel Bridges Jr. ; Mike Bridges ; Jason Pace
**Sent:** Thursday, May 27, 2004 11:08 AM
**Subject:** Touch Asia Hardware EXCEL SPREADSHEET

My only concern is that I own the equipment and not touch Asia. I can not lease any equipment I don't own. They can be the ship to but I am paying for it and own it outright not them. All the lease I do have that in there. You have indicated that isn't a problem. I need to know if there is anything I need to sign other than paying for the gear. I understand the contract for services is with Rudy, but he doesn't own the gear, I do, once I pay for it. No matter whose name the contract is under. We have discussed your ability to turn off the unit and you have

advised me since the equipment is mine it can be done any time.
Please advise if there is a contract for my company that needs to be done.
Regards
noreen

---

**From:** mikebridges [mailto:mikebridges@hctc.net]
**Sent:** Thursday, May 27, 2004 9:15 AM
**To:** Noreen
**Cc:** Michiel Bridges Jr.; Jason Pace
**Subject:** Fw: Touch Asia Hardware EXCEL SPREADSHEET

Noreen,

I hope this is what you need.  If there is anything else we can help you with, please let me know.
We want this to be an easy project also.  Just let me know.
Thank you,
Mike
----- Original Message -----
**From:** Lane McCarty
**To:** Michiel Bridges Jr. ; Mike Bridges ; Jason Pace
**Sent:** Thursday, May 27, 2004 11:04 AM
**Subject:** Touch Asia Hardware EXCEL SPREADSHEET

The attached EXCEL SPREADSHEET contains all serialized hardware listed within containing
PART NUMBER, DESCRIPTION, AND SERIAL NUMBER.
What more could a lady want?
Please DO NOT PDF :)



**Lane A. McCarty**
Vice President, Operations
Stratasoft, Inc.
713-795-2604
**www.stratasoft.com**
Amex : ISR
*"Truth is incontrovertible, malice may attack it and ignorance may deride it, but, in the
end, there it is."*
*Sir Winston Churchill*

This communication contains privileged, confidential and/or proprietary
information and is only intended to be read by the recipient.
If you have received this message by mistake, please delete its
contents immediately from your computer and your consciousness or call the above sender.  Thank you.