1

2

3

4

5

6

7

8         **UNITED STATES DISTRICT COURT**

9         **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   SCHNEIDER RUCINSKI                    CASE NO. 08cv138-WQH-POR
     ENTERPRISES,
12                                         ORDER
                          Plaintiff,
13            vs.
     STRATASOFT, INC., a Texas
14   Corporation; INX, INC., a Texas
     Corporation formally known as I-
15   SECTOR CORPORATION; and US
     COLO INC., the "Nevada Corporation"
16   AKA US COLO, ET Al.,
17                          Defendants.

18   HAYES, Judge:

19         The matters before the Court are the motion to dismiss filed by Defendants Stratasoft

20   and INX (Doc. 65), and the motion to dismiss filed by Defendant US Colo (Doc. 66).

21                          **PROCEDURAL BACKGROUND**

22         On January 23, 2008, Noreen Rucinski, proceeding pro se on behalf of her business

23   Schneider Rucinski Enterprises, filed a complaint against Touch Asia Outsourcing Solutions,

24   Inc., Rudy Ngaw, Stratasoft, Inc., INX, Inc., Lane McCarthy, Jason Pace, Mike Bridges,

25   Michael Bridges, Jr., Navros Haji, and COLO 6 LLC. (Doc. 1.) The complaint alleged twenty

26   state law claims for relief, including claims for specific performance, breach of contract,

27   breach of lease agreement, breach of guarantee, claim and delivery, conversion, fraud and

28   deceit, declaratory relief, account stated, imposition of constructive trust, injunctive relief,

unfair competition, intentional and negligent interference with contractual relations, intentional and negligent interference with prospective economic advantage, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, fraudulent inducement, and civil conspiracy.  (*Id*.)

On February 19, 2008, and March 14, 2008, Defendants INX and Stratasoft filed motions to dismiss for lack of subject matter jurisdiction.  (Docs. 7, 8, 17, 18.)  On April 29, 2008, this Court granted Defendants' motions to dismiss the complaint for lack of subject matter jurisdiction.  (Doc. 48.)  The Court found that the complaint had failed to establish complete diversity between the parties and did not raise any federal question.  The Court dismissed the complaint its entirety without prejudice and granted Plaintiff leave to file and serve an amended complaint.

On May 30, 2008, Plaintiff filed a First Amended Complaint (FAC) against Stratasoft, INX, US COLO One Wilshire LLC of Nevada, and Touch Asia.  (Doc. 51.)  In the FAC, Plaintiff asserted eighteen claims for relief, including intentional fraud and intentional misrepresentation, fraud and deceit, constructive trust fund, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1964(a) and (c) (RICO), unfair business practices, intentional interference with contractual relations, negligent misrepresentation, injunctive relief, breach of contract, breach of implied good faith, computer fraud, fraudulent inducement, telemarketing fraud, warranty fraud, breach of fiduciary duty, civil conspiracy, fraudulent conversion and conveyance, and breach of guaranty.  (*Id*.)

On June 19, 2008, Defendant US COLO One Wilshire filed a motion to dismiss for lack of diversity jurisdiction (Doc. 52) and a motion to dismiss for failure to state a claim or, in the alternative, motion for a more definite statement.  (Doc. 53.)  Defendants INX and Stratasoft filed a motion to dismiss for lack of subject matter jurisdiction or, in the alternative, to dismiss for failure to state a claim or, in the alternative, for a more definite statement.  (Doc. 54.)  On August 4, 2008, Plaintiff filed a motion for leave to file a second amended complaint (SAC).  (Doc. 59.)  On November 7, 2008, the Court granted the Defendants' motions to dismiss and granted Plaintiff leave to file a second amended complaint in order to "allege facts to support

a federal RICO claim." (Doc. 63 at 3.)

On November 17, 2008, Plaintiff filed the second amended complaint. (Doc. 64.) The SAC names Stratasoft, INX, and "US COLO, Inc., the 'Nevada Corporation' AKA, US COLO, ET AL" as the defendants. (Doc. 64 at 1.) The SAC names Touch Asia and Rudy Ngaw as "non-defendants." (*Id.*) Plaintiff alleges RICO violations of 18 U.S.C. §§ 1962(c) and (d) and state law claims for intentional interference with business and/or economic relationships, conspiracy to commit intentional interference with business or economic relationships, negligent misrepresentation, conspiracy to engage in promissory fraud, breach of fiduciary duty, breach of contract, breach of implied good faith, warranty fraud, conspiracy to breach fiduciary duties, fraud, and conspiracy to defraud.

On December 8, 2008, Defendants Stratasoft and INX filed a motion to dismiss the second amended complaint pursuant to Rule 12(b) (1) of the Federal Rules of Civil Procedure on the grounds that (1) Plaintiff has failed to meet her burden of establishing that there is complete diversity between herself and each of the defendants named in the second amended complaint and (2) Plaintiff has failed to state a plausible RICO claim sufficient to support federal question jurisdiction. (Doc. 65.) In the alternative, Defendants Stratasoft and INX move to dismiss under Rule 12(b)(6) for failure to state a claim. On December 9, 2008, Defendant US Colo, LLC filed a motion to dismiss the second amended complaint for lack of diversity jurisdiction under Rule 12(b)(1). (Doc. 66.) Plaintiff filed a response in opposition to the motions (Doc. 70) and Defendants filed their replies (Docs. 71, 72). The Court heard oral argument on February 23, 2009.

## ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

"Plaintiff Noreen Rucinski is a California citizen doing business under the business name Schneider Rucinski Enterprises (SRE), a sole proprietorship." (SAC ¶ 9.) Defendant Stratasoft is a "Texas LLC Corporation" that "operates a company that sells software, hardware for call center platforms. Stratasoft also sells annual and/or monthly maintenance and call solutions services to the public." (*Id.* ¶ 10.) Mike Bridges, Jason Pace, and Lance McCarthy are employed by Stratasoft. (*Id.*) Defendant "US COLO LLC ('US COLO')

according to the Secretary of State of Nevada is a limited liability company with domicile and residency in Nevada." (*Id*. ¶ 11.) "US COLO currently operates a 'closed door' 'lockout' operation for telecommunications, providing a location with power, and other ancillary options for connectivity to other suppliers of telecommunications." (*Id*.) Haji Navroz, Rick Fisher, and Max McCombs are employed by US COLO. (*Id*.) Defendant INX is the "parent company of Stratasoft which presently has principle place of business in Harris County, Texas and operates as the holding company for Stratasoft." (*Id*. ¶ 12.) Under the heading "non-parties" the SAC alleges that "Rudy Ngaw was president of Touch Asia, a factious and invisible company" that has "had several other names" including "Pacific Call Centers, Touch Asia Solutions, Pacific Call Solutions and Touch Asia Call Centers." (*Id*. ¶ 13.)

In May 2004, Plaintiff received a phone call "from a person who introduced himself as Michael Bridges, Sales Representative of Stratasoft Inc." (*Id*. ¶ 14.) Mr. Bridges "asked plaintiff if she would be interested to finance the equipment purchase of one of their corporate clients named Touch Asia because the latter was unable to get funding directly from Stratasoft's in house financing and that Touch Asia was having a difficult time getting financing anywhere." (*Id*. ¶ 17.) Plaintiff informed Mr. Bridges that she was not interested. (*Id*. ¶ 18.) Two days later, "Mike Bridges called again and asked plaintiff what would it take to have their client Touch Asia be funded by plaintiff and that Stratasoft is willing to do anything to get the deal done." (*Id*. ¶ 19.) "Plaintiff still refused and stated that SRE is not a financing or lease company. Plaintiff clarified that she normally just purchases equipment and rents it to her clients for very short durations no longer than 18 months." (*Id*. ¶ 20.)

After several more unsuccessful attempts to negotiate a financing deal, Plaintiff was contacted by Stratasoft Sales Manager Jason Pace. (*Id*. ¶ 21.) "Jason Pace then induced plaintiff to do the deal." (*Id*.) The terms of the deal were represented to Plaintiff as follows:

> SRE will purchase the equipment from Stratasoft; SRE will get all the sales documents, warranties and licenses for the hardware and software relating the Call Center Equipment, it will come with fully functioning licenses that would also be allowed for resale at any future time when necessary; SRE will rent the equipment to Touch Asia to Operate from the USA; the equipment will have a software shut off toggle or dongle remotely controlled via the internet and accessible by SRE so that Touch Asia cannot operate the equipment in the event of default; Stratasoft will deliver the equipment to Touch Asia's office in

> California; Touch Asia will pay rentals to SRE directly; in the event of Touch Asia's default, Stratasoft will recover the equipment from Touch Asia and resell it and the proceeds of the sale shall be given to SRE plus any balance.

(*Id*. ¶ 22.) Plaintiff was contacted by Stratasoft Chief Financial Officer Lance McCarthy, who "further guaranteed the above mentioned scheme." (*Id*. ¶ 23.) "Pace, Bridges, and McCarthy all stated repeatedly to plaintiff that all that is needed to do is for SRE to give the purchase order and send the initial payment to Stratasoft and that no other agreement is necessary." (*Id*.)

In May and June 2004, "defendants had their US Mail Delivery Service make several picks up for the plaintiff's payments to Stratasoft using the American Express Checks of Plaintiff along with the Purchase Order amounting to $128,000.00 from the plaintiff's Soho residence in California and delivered it to the defendant Stratasoft's office in Harris County, Texas." (*Id*. at ¶ 26.) In June and July 2004, Plaintiff "asked Jason Pace and others in Stratasoft for the sale documents, licenses and for the software access for the 'remote access' to the equipment as guaranteed by defendants, but was informed that it will be sent through the mail after the signed off approval of the installation of the equipments." (*Id*. at ¶ 27.) "Plaintiff emailed a landlord waiver contract to US Colo on or about May of 2004 for the process of getting the equipment set up in US Colo's colo per Touch Asia." Plaintiff made it clear to "Haji Navroz and Rick Fisher of US Colo" that she "would not allow SRE Owned equipment that was to be rented or operated by Touch Asia or Rudy Ngaw or anyone else, or to go into US Colo's leased spaces without a signed auto release waiver." (*Id*. at ¶ 28.)

In May 2004, "US Colo Haji Navroz emailed the plaintiff" and informed her that "the contract was being reviewed and they have no issues." (*Id*. at ¶ 28.) "US Colo and Rudy Ngaw on a phone conversation asked plaintiff to relent on a waiver, instead in the furtherance to get the equipment in the closed door facility." (*Id*.) "Haji Navroz told the plaintiff that the paperwork was 'on its way' 'signed' so that the plaintiff would be lulled in to allowing the equipment in to the facility." (*Id*.) "US Colo knowingly and fraudulently conspired with Touch Asia and Stratasoft using the previous historical unlawful, containment and concealment of the Plaintiff's equipment in 2003 (seecomm VS US COLO) and SRE VS US Colo also in

2003, for stealing and harboring, aiding and abetting a theft and fraud." (*Id*.) "US Colo with this prior knowledge of ownership, knowingly and with clear intent to defraud and aided and abetted by 'Association in Fact' in the second of three enterprises used to defraud the plaintiff and keep, retain, conceal the equipment unlawfully using deception and lulling." (*Id*.) "The intent to defraud was put into action from the very beginning." (*Id*.)

In June 2004, "defendants shipped the equipment from Harris County, Texas to the Philippines" without Plaintiff's knowledge and consent "and with the intent to defraud the plaintiff." (*Id*. ¶ 30.) "To divert plaintiff's attention, another delivery was made in July of 2004 to Touch Asia's US Colo Collocation in Los Angeles" in order to "make it appear as if no fraudulent diversion of delivery was made by defendants." (*Id*.) The scheme "appears to be following a certain pattern which the defendants have been following all along as they seem to be smoothly and stealthily committing their fraud scheme and aiding and abetting the Interstate Transport, Transit of Stolen Goods." (*Id*.)

In August of 2004, Plaintiff called and emailed Rudy Gnaw at Touch Asia, "who claimed the equipment [was] in operation and already fully installed." (*Id.* ¶ 31.) Rudy Gnaw concealed the delivery locations "and any subsequent paperwork from the defendants" from Plaintiff. (*Id*.) "The Plaintiff expected to receive payments but she waited in vain. Touch Asia appeared to be one of several enterprises being used by defendants in the commission of their fraudulent scheme." (*Id*.)

In August of 2004, Plaintiff "asked defendants officer Jason Pace for the Sales Contract, licenses, software copies, and hardware serial numbers to complete the transaction in the plaintiff's books. The plaintiff requested the remote access information she needed to set up the shutoff for the equipments and secure a UCC-1 filing of purchase for the State." (*Id*. ¶ 32.) Jason Pace and Julie Watkins informed Plaintiff that "they would get back would be putting it in the mail [sic]." (*Id*.) "In October of 2004 through November the plaintiff repeatedly requested the setup from the defendants Stratasoft regarding the shut off switch and was told they would get back to her." (*Id*.) "In December of 2004 the plaintiff called again to get the setup of the shutoff especially since she had not received anything further was finally told by

Jason Pace that she cannot have access turn off Touch Asia." (*Id*.) Plaintiff was informed that "Stratasoft would get into 'trouble' for 'just' shutting it off, even though it was represented to SRE, that the defendants could shut it off and had shown the plaintiff, prior to purchase and that it would be in Touch Asia's maintenance contract, supplied by the defendant Stratasoft." (*Id*.) From October 2004 until November 2004 Jason Pace repeatedly stated to Plaintiff "that he was calling Touch Asia to remedy the situation." (*Id*.)

"After repeated calls to Jason Pace the defendant in December 2004 where he stalled, postured and finally directed the Plaintiff to . . . Gary Johnson, who stated he was an operation director with Stratasoft, stated he could [not] find anything showing, in any book keeping or PNL that showed the Plaintiff was even a customer of Stratasoft and therefore, doesn't have the right to turn off the Touch Asia equipment." (*Id*. ¶ 33.) Gary Johnson told Plaintiff that "the Plaintiff doesn't have any agreements and or equipment from defendants Stratasoft." (*Id*.) While Gary Johnson found no purchase orders, licenses, hardware or software in Plaintiff's name, "there were Sales and Maintenance contracts in the name of Touch Asia." (*Id*.) "Plaintiff was stunned and shocked she felt betrayed and on hindsight, she realized that all that had transpired were part of a grand scheme to commit grand larceny and defraud her several times over of money, property through the repeated phone calls with the same misrepresentations of guarantees and false promises." (*Id*.) Plaintiff "was defrauded and victimized several times over through the emails and electronic communications sent to her by the above mentioned officers and representatives of defendant Stratasoft/INX and US Colo." (*Id*.)

"Plaintiff was defrauded and directly injured in the amount not lower than $254,955.00 which was the cost of the equipments purchased from Stratasoft for which relief can be granted." (*Id*. ¶ 34.)

"Upon discovering the fraudulent scheme perpetrated against plaintiff, plaintiff immediately emailed and had a telephone conversations with the president of INX Inc. Jim Long and complained about the fraudulent scheme of its subsidiary Stratasoft." (*Id*. ¶¶ 35-36.) Jim Long promised Plaintiff that would "check into it." (*Id ¶ 36*.) After speaking with Mr.

Long, the following transpired:

> Plaintiff received a stern and malicious letter from Attorney Michael Narsete of INX Inc. which clearly intended to intimidate and cower plaintiff into silencing her and not to divulge this grand theft and fraudulent scheme and acts of racketeering that Mr. Long and his representatives were trying to hide, which appeared to have been perpetrated by the this same company against other entities in the telecom industry. Said fraudulent scheme had been intending on using the enterprise's Touch Asia and US Colo in Los Angeles, California and ultimately did use in the furtherance of their unlawful and fraudulent scheme.

(*Id*.) Plaintiff has "repeatedly demanded from the defendants Stratasoft and US Colo the return of her payments and or equipment plus damages but her demands were all in vain." (*Id*. ¶ 37.)

## LEGAL STANDARDS

A suit may be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure where there is a "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for 'federal-question' jurisdiction, § 1332 for 'diversity of citizenship' jurisdiction." *Arbaugh v. Y & H Corp*., 546 U.S. 500, 513 (2006); 28 U.S.C. §§ 1331-1332. "A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States. She invokes § 1332 jurisdiction when she presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $ 75,000." *Arbaugh*, 546 U.S. at 513 (citing 28 U.S.C. §§ 1331-1332). The party which invokes jurisdiction bears the burden of demonstrating its existence. *Kokkonen v. Guardian Life Ins. Co. Of Am*., 511 U.S. 375, 377 (1994).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss under Rule 12(b)(6), the court reads the complaint in the light most favorable to the non-moving party. *Odom v. Microsoft Corp.,* 486 F.3d 541, 547 (9th Cir. 2007). "Allegations in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes of the motion." *Id*. Courts may "consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for

summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). A complaint may be dismissed for failure to state a claim where the factual allegations do not raise the "right to relief above the speculative level." *Id*.

## DISCUSSION

### I. Motion to Dismiss for Lack of Jurisdiction

In her second amended complaint, Plaintiff alleges that "the Court has jurisdiction under 28 U.S.C. 1332 in that the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000.00 exclusive of costs and interest." (SAC ¶ 2.) The second amended complaint alleges "in the alternative" that "this action is brought under the federal Racketeer Influenced and Corrupt organization statute, 18 U.S.C. 1961 and various other common law doctrines or statutes. Jurisdiction is vested in this Court by virtue of 28 U.S.S. 1331." (SAC ¶ 3.)

Defendants Stratasoft and INX move to dismiss the second amended complaint pursuant to Rule 12(b) (1) of the Federal Rules of Civil Procedure on the grounds that (1) Plaintiff has failed to meet her burden of establishing that there is complete diversity between herself and each of the defendants named in the second amended complaint and (2) Plaintiff has failed to state a plausible RICO claim sufficient to support federal question jurisdiction. (Doc. 65.) Defendant US Colo, LLC filed a motion to dismiss the second amended complaint for lack of diversity jurisdiction under Rule 12(b)(1). (Doc. 66.)

In opposition to Defendants' motions to dismiss, Plaintiff asserts that this case is properly before the court on federal question jurisdiction because she has alleged "specific acts constituting violations of the RICO act." (Doc. 70 at 5.) In support of diversity jurisdiction, Plaintiff asserts that "in determining a juridical person's citizenship for purpose of diversity, it is the State where the said entity is registered which should be of primordial consideration.

Since the defendants are known to be Nevada-registered and Texas-registered corporations, there is complete diversity as contemplated by law since plaintiff is a citizen of California." (Doc. 70 at 6.)

**Diversity Jurisdiction**

Federal diversity jurisdiction under 28 U.S.C. § 1332(a) extends to "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  28 U.S.C. § 1332(a)(1).  "Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties."  *Kanter v. Warner-Lambert*, 265 F.3d 853, 857 (9th Cir. 2001).  The Ninth Circuit recently explained the application of the diversity rules in cases involving entities rather than individual citizens:

> In cases where entities rather than individuals are litigants, diversity jurisdiction depends on the form of the entity.  For example, an unincorporated association such as a partnership has the citizenships of all of its members.  By contrast, a corporation is a citizen only of (1) the state where its principal place of business is located, and (2) the state in which it is incorporated.

> LLCs resemble both partnerships and corporations. Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for the purposes of diversity jurisdiction.  This treatment accords with the Supreme Court's consistent refusal to extend the corporate citizenship rule to non-corporate entities, including those that share some of the characteristics of corporations. This treatment is also consistent with the common law presumption that unincorporated associations are not legal entities independent of their members.  We therefore join our sister circuits and hold that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens.

*Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (citations and quotations omitted).

In this case, Plaintiff alleges that US Colo, LLC is a limited liability company "with domicile and residency in Nevada."  (SAC ¶ 11.)  In support of this allegation, Plaintiff has submitted the entity details from the Nevada Secretary of State for US Colo, LLC.  (*Id*. Ex. F.) While US Colo, LLC appears to be an active limited liability company registered in Nevada, Plaintiff's evidence also shows that two of US Colo, LLC's managing members are citizens of California and that the third is a citizen of Nevada.  (*Id*. Ex. F at 2.)  For diversity jurisdiction purposes, US Colo, LLC is a citizen of California and Nevada because "its

owners/members are citizens" of both California and Nevada. *Johnson*, 437 F.3d at 899. In light of the fact that Plaintiff and US Colo, LLC are both citizens of the State of California, the Court concludes that diversity jurisdiction is lacking in this case.

**Federal Question Jurisdiction**

A claim invoking federal question jurisdiction "may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." *Arbaugh*, 546 U.S. at 513, n.10; (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946) ("a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous"); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 90 (1998) ("[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy").

Assuming, without deciding, that Plaintiff's RICO claims were not made solely for the purpose of obtaining jurisdiction, the Court will consider the merits of those claims under the standard of Rule 12(b)(6).

**2. Motion to Dismiss for Failure to State a Claim**

In the alternative their motion to dismiss under Rule 12(b)(1), Stratasoft and INX move to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, Defendants assert that Plaintiff has failed to state a claim for relief under RICO because she has failed to allege that the Defendants engaged in a pattern of racketeering activity or threat of continuity as required by 18 USC § 1964(c). (Doc. 65 at 7.) In her opposition, Plaintiff contends that her second amend complaint "shows the unequivocal patterns and recurring acts of fraud, mail fraud, wire fraud, interstate transport of goods, theft robbery, appropriations of equipment, all done to cause injury and harm, to deprive the use and ownership and money benefitted from the purchased Stratasoft equipment to the plaintiff."

(Doc. 70 at 2.)

In this case, Plaintiff alleges that Michael Bridges, Jason Pace, Lance McCarthy, Rudy Ngaw, Haji Navroz, US Colo, One Touch Asia, Stratasoft, and INX were involved in or associated with an enterprise which committed a pattern of mail fraud, wire fraud, bank fraud, interstate transport of stolen goods, and obstruction of justice. Plaintiff alleges that the various mail, fax, and telephone communications to Plaintiff in May, June, and August 2004 amount to mail and wire fraud in violation of 18 U.S.C. § 1341 and 1343 (SAC ¶¶ 50-60); that the "transport in interstate commerce" of funds "from SRE's bank account in California to INX's holding account at Southwest Bank of Texas" amount to bank fraud and interstate transport of stolen property in violation of 18 U.S.C. §§ 1344 and 2314 (SAC ¶¶ 61-62); and that the "concealing of SRE's accurate ownership rights, billing records, and any other pertinent information with the intent to impair the integrity or availability of SRE's recording of financial ownership, contracts and records to prevent its use in an official proceeding" amounts to obstruction of justice in violation of 18 U.S.C. § 1512 (SAC ¶¶ 63-64). The second amended complaint alleges RICO violations under 18 U.S.C. §§ 1962(c) and (d).

RICO imposes civil liability upon "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. §§ 1962(c). Section 1962(d) provides: "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To state a claim under 18 U.S.C. § 1962(c), a complaint must allege (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985).

A "pattern" of racketeering activity requires at least two predicate acts. 18 U.S.C. §§ 1961(5), 1962(c). While two predicate acts are necessary to state a claim, they may not be sufficient; a plaintiff must "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H. J. Inc. v. Northwestern Bell Tel.*

*Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). The Supreme Court explained this

"continuity" requirement in *H. J. Inc. v. Northwestern Bell*:

> Continuity is both a closed and open ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long term criminal conduct.

*H. J. Inc.*, 492 U.S. at 241-242. "Thus, in order to allege open-ended continuity, a RICO

plaintiff must charge a form of predicate misconduct that by its nature projects into the future

with a threat of repetition." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citations

omitted). "Conversely, an alleged series of related predicates not extending over a substantial

period of time and not threatening future criminal conduct fails to charge closed-ended

continuity." *Id.*

The Ninth Circuit dealt with facts similar to those now before the Court in *Medallion*

*Television Enters. v. SelecTV of California*, 833 F.2d 1360 (9th Cir. 1987). In *Medallion*, the

predicate acts alleged by the plaintiffs were wire fraud, in the form of telephone calls between

the defendant and the plaintiff in which the defendant induced the plaintiff to meet to discuss

forming a joint venture, and mail fraud and interstate transportation of stolen property, in

connection with the defendant having caused the plaintiff to transfer letters of credit from

plaintiff's Chicago bank to the Bahamas. *Id.* at 1362. The Ninth Circuit held these acts were

not indicative of a threat of continuing activity:

> This case involved but a single alleged fraud with a single victim. All of SelecTV's assertions about the number of licensing agreements it had obtained were parts of its single effort to induce Medallion to form the joint venture in order to obtain the broadcast rights from the promoters. In essence, Medallion's allegations concern a single fraudulent inducement to enter a contract. Once the joint venture had acquired the broadcast rights, the fraud, if indeed it was a fraud, was complete. Medallion has not directed us to any evidence that SelecTV defrauded it in any other way as a part of this scheme or any other, nor is there anything in the nature of the transaction to suggest that SelecTV would have needed to commit any other fraudulent acts. Similarly, notwithstanding Medallion's unsupported assertions to the contrary, Medallion was the single victim of the alleged fraud.

*Id.* at 1364.

In this case, the pattern of racketeering activity is related to single transaction in which a single victim is alleged to be have been defrauded. The alleged acts of mail and wire fraud are based on the mail and phone communications in which Plaintiff was "induced" into buying the Stratasoft equipment to lease to Touch Asia. The alleged acts of interstate transport of stolen goods and bank fraud are based on Plaintiff's payment for the equipment. Plaintiff alleges that "all of the predicate acts were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to defraud SRE, their common result was to defraud SRE of money; deprive and/or rob SRE of ownership, licenses and clients." (SAC ¶ 82.) Since the only goal of the defendants was to "defraud SRE," any threat of continuing racketeering activity ceased when Plaintiff sent the purchase money to the defendants. Moreover, because each of the alleged acts occurred during a three month period between May 2004 and August 2004, Plaintiff has failed to allege a "series of related predicates extending over a substantial period of time."

Having failed to demonstrate that the acts of mail fraud, wire fraud, bank fraud, interstate transport of stolen goods, and obstruction of justice had the requisite continuity, the Court concludes that Plaintiff has not alleged a "pattern" of racketeering activity under §1962(c) and (d). *See Turner*, 362 F.3d at 1231 ("[b]ecause appellants failed to allege the requisite substantive elements of a RICO claim under 18 U.S.C. § 1962(c), appellants' claim under 18 U.S.C. § 1962(d), which makes it 'unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section,' also fails"). Accordingly, the Court dismisses the first, second, third and fourth RICO claims alleged in the second amended complaint.

**3. Supplemental Jurisdiction Over Remaining State Law Claims**

A court may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367. "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over

the remaining state-law claims." *United Mine Workers of America v, Gibbs*, 383 U.S. 715, 726 (1966). Having dismissed all of the federal law claims and finding no diversity jurisdiction in the second amended complaint, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Claims five through twelve of the second amended complaint are dismissed.

**4. Leave to Amend**

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, leave to amend may be denied for reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In this case, Plaintiff has repeatedly failed to cure deficiencies by amendments previously allowed, and a third attempt to state a RICO claim would, under these facts, be futile.

**CONCLUSION**

IT IS HEREBY ORDERED that the motion to dismiss filed by Defendants Stratasoft and INX (Doc. 65) is GRANTED without leave to amend. The motion to dismiss filed by Defendant US Colo (Doc. 66) is GRANTED without leave to amend. The Clerk of the Court is instructed to close this case.

DATED: March 3, 2009

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge